## RUDD v. SAVELLI.

1. VENDOR AND VENDEE: *Suit for purchase money: Tender of deed.*
   A vendor of land by title bond cannot have relief for the purchase money, where the payment of it and the making of title are to be concomitant acts, or where the execution of the conveyance is to precede the payment, unless before suit, or, at farthest, at the time of the decree, he shows himself able and willing to execute a warranty deed and tenders one.
2. SAME: *Bond for title: Character of title to be made.*
   A bond for "a deed of conveyance in fee of the legal title," means a "good and sufficient" conveyance with the usual covenants of the vendor, and not of a stranger. Equity will not in contracts of this nature compel a vendee to pay money when his vendor cannot make him a title.

APPEAL from *Pulaski* Chancery Court.

Hon. D. W. CARROLL, Chancellor.

*W. G. Whipple* for appellants.

1. Lucchessi and Henry were purchasers *pendente lite*, and bound by the result of this suit.

2. The defense of want or failure of consideration has failed. Rudd & Andrews had already bought the block

of Edgerton, and on the following day procured Edgerton's bond for title. At the time of the final hearing they *tendered in open court* the absolute deed of Edgerton for the property. The consideration was *title to the block*, and this was tendered her. The foreclosure of Edgerton did not affect her, as she was not a party. She was charged with notice of the title by the public records. She had at least the *right to redeem*, which is a consideration. (*31 Ark., 98.*) A failure of consideration must be total. (*Parsons Cont., vol. 1, *p. 462, note.*) The instruments sued on being promissory notes, import a consideration, and the *burden* was on appellees to show want of consideration. (*33 Ark. 97.*) A promissory note founded on an agreement to convey land of another or *third* person, is not invalid for want of consideration. (*29 Pick., 105.*) See also *Johnson v. Sewell, 33 Ind.*

3. Argues elaborately and cites an array of authorities to show:

First—That the property was the separate estate of Mrs. Savelli.

Second—That the notes constitute a charge in equity upon it; and,

Third—That they are a charge upon after acquired property; but as the case turned on the tender of a *sufficient* deed they are not published.

*Blackwood & Williams* for Henry.

A married woman's note is *void* (*35 Ark., 372; 39 Ib., 242; Kelly on Mar. W. Cont., p. 87*), except she contract with reference to her separate estate, or for its benefit or protection, or where she contracts for *her own peculiar benefit.* (*29 Ark., 447, 351; 30 Ib., 773; 22 Ib., 451; 33 Ib., 267; 39 Ib., 242; 1 Bish. on Mar. W., sec. 870 et seq.; Wells, sec. 315; Kelly Ch., 6.*) Contend from the evidence that

she (Mrs. Savelli) does not fall within the exception. She had no separate estate, and there is nothing to show that the purchase was *for her own special benefit.* The facts contradict such a theory. *29 Ark., 447.*

The foreclosure by Edgerton, and sale, cut off the last vestige of title in appellants and Mrs. Savelli, and there was a *total failure* of consideration, *if there ever was any* in the beginning. Argue that at any rate, the notes were not a charge on after acquired property, and that Henry was an innocent purchaser, etc., etc.

*M. W. Benjamin* for appellee, Lucchesi and others.

Makes the same points as his co-counsel, citing many additional authorities.

Appellants sold this property before they had a shadow of title, and on the next day bought of Edgerton on a credit. *They never paid a cent.* Edgerton foreclosed and bought in the block, and a deed was made to him and approved before any trial of this cause. So, at the time of the trial there was a total failure of title, and an eviction, or its equivalent, which makes a failure of consideration. (*15 Ark., 487; Rawle on Cov. Title, p. 604.*

The deed tendered was a *conditional* one, whereas Mrs. Savelli was entitled to an *absolute* deed *with covenants of warranty from the vendors.* The tender was *worthless.*

EAKIN, J. On the thirtieth day of May, 1873, appellants, Rudd and Andrews, sold to N. Spinola and Mrs. M. T. Savelli, wife of L. Savelli, a block of ground in Little Rock, described as block 22, in the Capital Hill extension, for fifteen hundred dollars. Five hundred dollars were paid in cash, and the balance was secured by three notes of that date; one for $300, due at ninety days; one for $350, due in one year, and the last for $350, due in two

years.    These notes were signed by Savelli and wife, and by Spinola, and expressed that they were executed as part payments on the block.    They were to bear interest at the rate of 10 per cent. per annum until maturity, and 24 per cent. per annum afterwards until paid.    It may be well to state here that Spinola afterwards conveyed all his interest to Mrs. Savelli, and then disappears from the contest.

Rudd and Andrews executed a title bond to the purchasers, conditioned, on payment of the notes, to make to them "a deed of conveyance in fee of the legal title of, in and to said tract of land and appurtenances."    The sale was purely speculative.    The vendors then had no title to the land, legal or equitable.    That was outstanding in Edgerton.    Mrs. Savelli then had no separate estate of any kind.    Besides the $500 paid at the time of the purchase, she afterwards paid the note for $300, and upon the first note for $350, she paid at different times $258.25, making in all $1,058.25.    She afterwards acquired other real estate in her own right, which, during the pendency of this suit, she sold and conveyed to third parties.

The next day, the vendors, Rudd and Andrews, purchased said block from Edgerton for the sum of six hundred and sixty-six dollars, secured to be paid by two notes, and took his title bond to themselves.    Although it seems that they got the lot from Edgerton for less than half what they had sold it for the day before to Mrs. Savelli, and had then $500 of her money in hand, and afterwards received from her more than as much again, they never paid Edgerton a cent; but suffered him, before the decree in this case, to foreclose his lien and to re-purchase the property at the sale.    He now holds the complete legal and equitable title.    No party to this suit has any

right to it whatever, nor can get any save by Edgerton's favor.

On the twenty-third day of October, 1877, Rudd and Andrews filed this bill against Savelli and wife to enforce payment of the balance of the note for $350 due at one year, and all the last note. They charged that she was then the separate owner, not only of said block 22 (against which Edgerton's lien had not yet been foreclosed), but also of three lots in block 23, and a small tract of about 12 acres out of the city. They allege that the purchase by Mrs. Savelli was for the advantage of her separate estate, and that the notes were given and taken with the intention of binding it, and they pray that all the property which she then had be subjected to their payment.

In the course of the proceedings, Henry, who had purchased from Mrs. Savelli the twelve acre tract, and Lucchesi who had purchased the lots in block 23 were made defendants, and all answered. Mrs. Savelli set up no consideration, as did all, in effect. They urged in defense that, under the circumstances, the notes could not be made a lien on other separate estate acquired after the execution of the notes, and her vendees contended that they were innocent purchasers without notice. Meanwhile Edgerton's lien was foreclosed as above stated in a separate suit.

The proof and pleadings developed the facts as narrated. The deposition of Rudd was taken. As part of it he offered to Mrs. Savelli a deed for the block which he had procured Edgerton to execute, although he had never tendered one to her before suit, or in court. It reads, that in consideration of the sum of eleven hundred dollars *to be paid* by Mrs. L. Savelli, he does hereby convey, grant, bargain and sell unto her, her heirs, etc., the block in question, with this proviso in brackets: "It being distinctly

understood that this deed is not to take effect as a conveyance, or to be delivered to Mrs. Savelli until she shall have paid to Rudd and Andrews or their assigns the balance due them upon the sale of said block by them to Mrs. Savelli." Then follow covenants of warranty by Edgerton and his wife, who sign the deed.

Upon hearing the Chancellor found, in a written opinion, that the execution of the notes by Mrs. Savelli, expressing the particular purpose for which they were given did not disclose any intention on her part to bind any other separate property, if she then had any. In effect, that it gave the usual vendor's lien, which did not attach to the lots and land subsequently acquired; and that this contract did not come within the class which, under our laws, a married woman could make, to bind her separate estate generally.

Also, that it was apparently out of the power of complainants to make a title to Mrs. Savelli, inasmuch as they had allowed Edgerton to prosecute his suit against them for the purchase money due to him, and in place of paying the same, and putting themselves in condition to fulfill the obligations of their bond to Mrs. Savelli, had suffered the title to pass beyond their control. The relief prayed was refused, and the complainants appealed.

The view we take of this case renders it unnecessary to discuss several questions earnestly pressed in the briefs of the respective counsel. That is, whether the contract bound all the separate estate of Mrs. Savelli, or whether if it bound that which she had then, it could bind also that subsequently acquired.

1. VENDOR AND VENDEE: Suit for purchase money: Tender of deed.    A vendor who has sold by title bond cannot have relief against the purchaser for the purchase money, where the payment of it and the making of the title are to be comitant acts; or where the execution of the conveyance

is to precede the payment; unless, before suit, or at farthest, at the time of the decree, he shows himself able and willing to execute a warranty deed, and tenders one. The defendant must be placed in position to pay the money and go out with a clear deed, in accordance with the bond. In such case if he should fail to pay the money, the court may proceed to foreclose. To have the effect of thus precluding all defense against the payment of the purchase money, it is obvious that the deed must be a clear and unconditional one, otherwise it cannot form a link in a clear chain of marketable title without inquiries (aliunde) as to whether its conditions and provisions have been fulfilled. As the court holds the deed when tendered until the purchase money is fully paid, it is plain that it should express that there is nothing due upon it, and that it is absolute, if such be the kind of deed contracted to be made. Here was a deed found in the hands of Rudd from Edgerton, conveying the block to Mrs. L. Savelli for eleven hundred dollars, *to be paid*, and expressly providing that it should not be delivered to her until she had paid all she was due Rudd and Andrews. It is impossible to determine the meaning of such a deed as this, upon the face of it. Suppose she had paid Rudd and Andrews, and gone out of court with it, and offered the lot for sale. A prudent purchaser would not have taken a conveyance from her without being satisfied that she had paid Rudd and Andrews, and thus become entitled to the possession. This he might perhaps presume, but would also be put upon inquiry as to whether the eleven hundred dollars was a part of the sum to be paid Rudd and Andrews, or a separate claim of Edgerton's, which, if still unpaid would be a lien on the land. By grammatical construction of the deed itself it would be. If I execute a deed, reserving a lien for money to be paid, and provide in that deed that it

shall not take effect till the vendee does some act, and he does that act, and the deed takes effect, it does so according to its terms, and the land is subject to the lien. And even if that were not what was meant, and Mrs. Savelli could, by going back and showing all the transactions, make it manifest that the payment to Rudd and Andrews satisfied Edgerton also, she ought not to be burdened with that trouble. The deed is awkwardly drawn and obscure. It should, to be a valid tender, have been absolute, with no apparent lien about it. She should have been able to leave the court with full clearance of all charges. The court would see to it that she did not take the deed out till she had paid. That was sufficient protection to Rudd and Andrews, and to Edgerton also, if he made the deed in their interests alone. She ought not to have been required to take such a paper as this on payment of the money.

2. BOND FOR TITLE: Kind of title to be made. Besides, the deed is not in accordance with the bond. By the use of the words "a deed of conveyance in fee of the legal title," we must presume, in the light of the fact that she gave not only full price, but what appears to be twice the value, that the parties intended a "good and sufficient" conveyance. Nothing else would vest in her the full legal title. In so far as it might not be good, nor sufficient, it would fail, of course. Such a title bond entitles the vendee to a deed with the usual covenants (*Watkins v. Rogers, 21 Ark., 298*), and that means the covenants of the vendor. A deed with the covenants of a stranger might be of small value.

It is conceded law now, that, in suits of this nature, a court of equity will not compel a vendee to pay his money where the vendor cannot make a title. (*Lewis v. Davis et al., 21 Ark., 235; McDermott v. Cabel et al., 23 Ib., 200; Anderson, Admr., v. Mills, 28 Ark., 175.*

There has never been a day when complainants could have made a title to Mrs. Savelli. They had none when they sold to her. They have none now. They have never, so far as appears, expended a cent even in an effort to get title. They have speculated upon her, by selling her lands of another man. They have charged her what was manifestly a high price, and taken notes providing for a shocking rate of interest. They have gotten from her over ·a thousand dollars in money, for which she got no value, and now seek the aid of a court of equity to pursue other property, subsequently acquired, to get the full measure of their anticipated gains, with interest at 24 per cent. per annum.

I cannot but doubt whether the annals of chancery jurisprudence can furnish a parallel to such an invocation of its powers. Ordinary men would be satisfied to be left unmolested with what they had got.

Putting our decision on cool and calm grounds, we think there was not a sufficient tender of deed to entitle complainants to relief, and if there had been, it is also shown that there was a failure of the consideration for the notes.

Affirm the decree.