Egger, *Appellant*, v. Nesbitt.

Division Two, June 12, 1894.

2 667
1 ⌐.a 56
122 667
85a 556
86a 291

1. **Contract:** LETTER: OFFER OF SALE: CONDITIONAL ACCEPTANCE. Where one offers by letter to make a quitclaim deed for a named price and the person receiving the letter accepts the offer on condition that other deeds are turned over to him, there is no binding contract.

2. ——: ——: ——: ——. Where one to whom an offer to sell land has been made by letter sends a conditional acceptance, he can not bind the proposer by an unconditional acceptance before the offer is withdrawn.

3. ——: ——: ——: ——. Where one offers by letter to sell land and the person receiving the letter accepts on condition that the deed be sent to a bank to be delivered on payment of the purchase price, such acceptance does not create a binding contract, as, by the terms of the offer, the proposer is entitled to payment at the place of his residence.

*Appeal from St. Clair Circuit Court.*

Affirmed.

*G. A. Neal* and *Cole & Ditty* for appellant.

(1) A good and sufficient contract for the conveyance of real estate may be made by letters and telegrams. Bishop on Contracts, sec. 328; *Greely-Burnham Co. v. Capen*, 23 Mo. App. 301; *Whaley v. Hinchman*, 22 Mo. App. 483; *Sohn v. Jarvis*, 101 Ind. 578. (2) Depositing a written acceptance of an offer to sell in the United States mail, with postage prepaid, properly addressed to the party making the offer, prior to the withdrawal of the offer itself, is a sufficient acceptance and completes the contract. *Lancaster v. Elliott*, 42 Mo. App. 503; *Tayloe v. Ins. Co.*, 9 How. 390; *Stotesburg v. Massengale*, 13 Mo. App. 231. (3) Full performance of the consideration of an offer, before the offer is withdrawn, constitutes an acceptance of the offer. Assent and notice need not be formally expressed; they may be given and communicated by conduct as well as by word. *Allen v. Chouteau*, 102 Mo. 309; 2 Coke on Littleton [Thomas' Ed.], sec. 325, and note; 2 Blackstone's Com., 428; Rapalje's Law Dictionary, title "Muminents;" Bouvier's Law Dictionary, title, "Mumiments;" *Cooper v. Ramsbottom*, 6 Taunt. 14; 27 Wis. 671; *Bruner v. Wheaton*, 46 Mo. 367; Benj. on Sales [6 Am. Ed.], secs. 42, 44; *Washburn v. Fletcher*, 42 Wis. 152; *Judd v. Day*, 50 Iowa, 247. (4) Assent will not be nugatory because of an immaterial

addition.    If the assent merely expresses what the law
would imply, the contract is binding, and so if to the
assent is added a mere hope or wish.    1 Benj. on Sales
[6 Am. Ed.], p. 55; *Clark v. Dales*, 20 Barb. 42; *Phillips
v. Moore*, 71 Me. 78; *Matteson v. Scofield*, 27 Wis. 671;
*Fitzhue v. Jones*, 6 Munf. 83; *Brisban v. Boyd*, 4 Paige,
17; *O'Neal v. James*, 43 N. Y. 84.    (5) Assent may be
indicated in various ways.    *Botkin v. McIntire*, 81 Mo.
557.    (6) It is not essential to the validity of a con-
tract that it should stipulate any time or place of deliv-
ery.    *Smith v. Schell*, 82 Mo. 218; Story on Sales, p. 270.
(7) A demurrer to the evidence admits everything
which the testimony conduces to prove, even though
only in a slight degree.    *Wilson v. Board of Education*,
63 Mo. 137; *Buesching v. Gaslight Co.*, 73 Mo. 219;
*Brink v. Railroad*, 17 Mo. App. 177; *Heriman v. Rail-
road*, 27 Mo. App. 435.

*Johnson & Lucas* for respondent.

(1) There is no contract unless the parties thereto
assent; and they must assent to the same thing in the
same sense.    *Eads v. Carondelet*, 42 Mo. 113; 1 Parsons
on Contracts, 475.    (2) A binding contract can only
occur when the offer made is met by an acceptance
which corresponds with the offer made in every partic-
ular.    *Robinson v. Railroad*, 75 Mo. 498.    (3) In order
that an acceptance may be operative, it must be une-
quivocal, unconditional and without variance of any
sort between it and the proposal, and it must be com-
municated to the other party without unreasonable
delay.    *Bruner v. Wheaton*, 46 Mo. 366; *Wire Mfg. Co.
v. Broderick*, 12 Mo. App. 384; *Cangas v. Mfg. Co.*, 37
Mo. App. 307.    (4) The failure to accept was a rejec-
tion of the offer.    If the acceptance in any material
way, differs from the original proposition, it amounts to

a rejection of the offer. *Cangas v. Mfg. Co.*, 37 Mo. App. 307, and cases cited by the court in the opinion; *Strange v. Crowley*, 91 Mo. 295. (5) The appellant having rejected the offer of the respondent, by his letter of March 5, the offer was at an end, and could not be renewed by the subsequent acceptance by appellant. See note, *Maclay v. Harvey*, 32 Am. Rep. 40–53. (6) The trial court found for respondent, and its finding ought not to be disturbed. The onus of establishing a contract by clear and satisfactory evidence was on appellant. And unless this is done a court of equity will not decree specific performance. *Taylor v. Williams*, 45 Mo. 80; *Strange v. Crowley*, 91 Mo. 294.

BURGESS, J.—This is an action for specific performance of a contract of sale, by defendant to plaintiff, of eighty acres of land, to wit: east half of the northeast quarter of section 36, in township 38, range 28, in St. Clair county, Missouri. Plaintiff bought the land at a sale of it for taxes, and subsequently sold it to one Larkins, who took possession of and improved it.

The petition avers that defendant owns the patent title to the land, which he for and in consideration of the sum of $400 to be paid to him by plaintiff agreed and promised in writing to convey to him, plaintiff, and that he is ready and willing to pay said purchase money, here offers to do so and prays that defendant be required to comply with the terms of his contract and for all proper relief. The answer is a general denial. Defendant had acquired the patent title to the land and plaintiff began negotiating with him for its purchase, and wrote to him in regard to the matter. To this letter defendant replied from Washington City, where he then resided, as follows:

"WASHINGTON, D. C., Feb. 26, 1890.
"*F. Egger, Esq., Appleton City, Mo.*

"DEAR SIR:—Your letter of December 30 was addressed to me at Osceola, Missouri, and, although I was in Osceola about that time, I received all my mail at Lowry City, and the letter laid at Osceola for some time, and when forwarded to me here went wrong in some way, and I only received it a short time ago.

"Your letter was a very kind one under the circumstances, and I will try to act in the same spirit; and although we are somewhat apart in our views of this matter, I hope we can adjust it now and in good feeling. When I first purchased these titles I assure you that I did not know that it would in any way bring me in conflict with you or your interests, as I told you that Mr. Larkin owned the other claim, and I did not know who he got it from. I bought the title from all the heirs and paid in cash to them $200, and to agents, attorneys and for recording, etc., about $60 or $70, more; this at ten per cent. interest would amount to about $400 at this time.

"I am willing to make a Q. C. deed either to you or to Larkin, pay the costs of the suit and dismiss it, for $400. I feel that this is a liberal offer, from the standpoint from which I view this case, which is about this: You purchased a tax title against a man who had died in 1855 and I think also the records show that it was sold in the name of Alexander Corder, when the correct name was Alexander Cowden, as is shown in the original patent which I have. I hold deeds from all his legal heirs, which I think clearly gives me the title. I think you sold the land many years ago to Larkin for $800. You have had the use of this money all these years on a tax title which only cost you a few dollars.

"I have laid out of my money for five years, and the amount named will only let me out whole, while you still have a small profit, and will be able to keep good faith with your purchaser, Mr. Larkin, and close the entire matter with all parties satisfied. The suit was only filed to save the statute of limitation and was in no way intended to annoy you; but if we are to settle it please let me hear from you soon, as I think your court comes in March or April, and, like you, I don't want any law whatever between us. We are well.

"Yours, with respect,

"SCOTT NESBITT."

To this letter plaintiff made reply, March 4, 1890. Leaving out the formal parts and immaterial matter, the reply is as follows:

"I will accept your proposition, with the understanding that you will deliver to me all the papers you have in reference to the land, U. S. patent and other deeds. You may make Q. C. deed in blank and send it with the other papers to J. B. Egger, and authorize him to insert either my name or Mr. Larkin's, which ever may be proper, and he will return the four hundred dollars to you as you may direct."

Plaintiff received no reply from the defendant to the above letter, and on March 14, again wrote to the defendant, as follows:

"Scott Nesbitt, Esq., Washington, D. C.

"DIR SIR:—On the 4th inst., I sent you a letter in reply to your letter of February 26, stating that I accept your offer in regard to the Alexander Cowden land, e. h. f. n. e. 1-4 sec. 36, town. 38, range 28, St. Clair county, and requested you to send Q. C. deed, name of party blank and authorize J. B. Egger to insert either my name or Mr. Larkin's, as may be found proper. As no answer or deed from you is received yet,

I would request you, if deed is not yet sent, to please make it complete and insert my name, Fredolin Egger. John B. Egger will remit the amount, four hundred dollars, to you as stated in my former letter. I will perhaps be compelled to be away for some time and wish to have this business settled before.''

Both of the above letters from plaintiff to the defendant, were deposited upon the dates they were written, respectively, sealed in envelopes, directed to Scott Nesbitt, 1333 F. street, N. W., Washington, D. C., in the United States postoffice at Appleton City, Missouri, with the postage thereon fully prepaid. The address to which the above-named letters were sent was Scott Nesbitt, 1333 F. street, N. W., Washington, D. C.

On March 31, 1890, plaintiff caused to be sent to defendant, to the same address as above, the following dispatch:

''F. Egger has deposited four hundred dollars to be paid to you on receipt of certain deeds.

"JOHN B. EGGER; Cashier.''

Plaintiff had then deposited in the First National bank at Appleton City, Missouri, the $400 to be paid to defendant upon the delivery of the deed to said land. Defendant did not receive the letter of March 4, but did receive that of March 14, and also the dispatch which was sent to the same address.

On May 1, 1890, defendant addressed a letter to John B. Egger, which is as follows:

"WASHINGTON, D. C., May 1, 1890.
'John B. Egger, Esq., Appleton City, Mo.:

"DEAR SIR:—Some weeks ago (March 31) I received a telegram from you saying that F. Egger had deposited four hundred dollars subject to a receipt of a

VOL. 122—43

'certain deed,' and about the same date a letter from your father saying that he had addressed two letters to me and asking if they had been received. I at once wrote to you that such letters had not been received, and asking their purport, and to what deed he had referred. I took it that it meant the Larkin-Cowden land, as way along, I think, in February last, I had written to him again, trying to adjust that cause before I had to take depositions, etc., but as I did not hear from him, concluded that he did not wish to settle, and made other arrangements. This was about the substance of my letter. As I have not heard from you, thought you had overlooked in some way. Please let me hear from you. All well and busy.

"Yours truly,

"SCOTT NESBIT."

At the close of plaintiff's evidence the court found for defendant, dismissed the petition and rendered judgment against plaintiff for costs. Plaintiff, after taking the usual course, prosecutes his appeal to this court.

It may be conceded that a contract may be made by letter or telegram, and that when the offer is made by letter and is accepted by letter, although the letter accepting the offer never reaches the hand of the person making the offer, providing the acceptance is mailed in due time, postage prepaid, and directed to the proper address of the person making the offer, or if accepted by telegram, the charges being prepaid, and directed as before stated in regard to the acceptance by letter, and the acceptance be made within a reasonable time, no time being fixed, or before the offer is withdrawn. Bishop on Contracts, sec. 328; *Whaley v. Hinchman*, 22 Mo. App. 483; *Greely-Burnham Co. v. Capen*, 23 Mo. App. 301; note 1, *Maclay v. Harvey*, 32 Am. Rep. 40; *Lancaster v. Elliott*, 42 Mo. App. 503; *Tayloe v. Ins. Co.*,

9 How. 390.   But the acceptance must be unconditional and in strict accordance with the proposition; that is, the mind of the person making the offer and of the one accepting it must meet in regard to the same subject-matter and terms of sale.   *Eads v. Carondelet*, 42 Mo. 113; 1 Parsons on Contracts [7 Ed.], star p. 475; *Green v. Cole*, 103 Mo. 70.

In *Bruner v. Wheaton*, 46 Mo. 363, the court says: "In order that an acceptance may be operative, it must be unequivocal, unconditional and without variance of any sort between it and the proposal, and it must be communicated to the other party without unreasonable delay.   To constitute a valid contract there must be a mutual assent of the parties thereto, and they must assent to the same thing in the same sense; therefore an absolute acceptance of a proposal, coupled with any qualification or condition, will not be regarded as a complete contract, because there at no time exists the prerequisite mutual assent to the same thing in the same sense.   Any words manifesting an *aggregatio mentium* are sufficient to constitute a contract, but the mutual consent—the *aggregatio mentium*—can not be attained without the assent of both parties."

Measured by the rule thus announced, plaintiff's letter to defendant of March 4, 1890, was not an acceptance of the proposition contained in defendant's letter to him dated February 26, 1890, for the reason that the acceptance was not unconditional, but with the understanding that defendant would deliver to him all the papers in reference to the land, United States patents and other deeds, about which there was nothing said in defendant's letter, or proposition, thereby making a new proposition of his own and imposing new burdens upon defendant, though light they may have been.   As the conditions upon which the proposition was accepted materially differed from the origi-

nal proposition, it amounted to the rejection of the offer. *Cangas v. Mfg. Co.*, 37 Mo. App. 297; *Strange v. Crowley*, 91 Mo. 287; 1 Parsons on Contract [7 Ed]; star p. 477.

It is contended by plaintiff that, even if his letter of March 4, 1890, was no more than a conditional acceptance, yet his letter of March 14, 1890, written prior to any withdrawal of defendant's offer, was an unconditional acceptance of defendant's offer, and that thereby the offer was accepted and the contract closed. Upon the other hand the contention is, that, the plaintiff having rejected the offer of defendant by his conditional acceptance, the offer was at an end and could not be renewed by a subsequent acceptance of it by plaintiff. *Judd & Co. v. Day Brothers*, 50 Iowa, 247, is relied upon by plaintiff as sustaining his position; but in that case there was no conditional acceptance of the offer to purchase and it was rightly held that the offer was a continuing one, unless otherwise specified or withdrawn.

Mr. Parsons, in his work on contracts, volume 1, star page 477 [7 Ed.] says: "The party making the offer may renew it; but the party receiving it can not reply, accepting with modifications, and when these are rejected, again reply, accepting generally, and upon his acceptance claim the right of holding the other party to his first offer." So in *Baker v. Johnson County*, 37 Iowa, 186, it is held that a proposal to accept, or an acceptance of, an offer upon different terms from those contained in the offer amounts to a rejection of it. See, also, *Jenness v. Iron Company*, 53 Me. 20; *Bank v. Hall*, 101 U. S. 43.

Plaintiff nowhere alleges a tender of the purchase money to defendant personally, but does allege that he has fully performed all the conditions of said contract

and agreement on his part at the execution and acceptance of the terms of said agreement, that he paid the defendant by deposit the sum of $400 at the First National Bank, in Appleton City, St. Clair county, Missouri, and notified defendant of the fact. He also alleges a refusal by defendant to execute the deed, and a readiness upon his part to pay the purchase price for the land.

At the time of the offer by defendant he was a resident of Washington City, D. C., which was well known by plaintiff, where, by the terms of his offer, he was entitled to payment, and the deposit of the money in the bank at Appleton City, was no payment or offer to pay the purchase money to him, and was not an acceptance of the contract. There is no pretense that the money was deposited in the bank, by or with the consent or direction of defendant and in the absence of something of that kind defendant was entitled to payment at the place where, or the city which, was, at the time, his place of residence. In *Gilbert v. Baxter* 32 N. W. Rep. 364, it is held that "in case of an offer by a person in one state to sell land in another state at a certain cash price, an acceptance, directing the deed to be sent to a bank in the latter state, to be delivered on payment of the price, will not create a binding contract, as the terms of the offer· entitle the vendor to payment in his own state." See, also, *Sawyer v. Brossart*, 67 Iowa, 678; *Langellier v. Schaefer*, 31 N. W. Rep. 690. ·

In the case in hand, plaintiff directed the deed to be made out in blank, to be sent to the bank, and upon receipt thereof, the money to be paid over to defendant; this was not an acceptance of the offer to sell as made by defendant.

The burden of proof rested upon the plaintiff to show, by clear and satisfactory evidence, the contract

which he seeks to have specifically enforced—that is, that his acceptance of the offer of defendant was unequivocal, unconditional and without any variance of any sort between it and the proposal, and, as he failed in this, he was not entitled to the relief which he sought. The judgment is affirmed. All of this division concur.