# WILLIAM C. TARR

*vs.*

# MILTON L. VEASEY.

*Contracts: assignment; personal trust and confidence; right and liability.*

Where a contract provides for mutual rights and liabilities, the latter can not be avoided by assignment, and the rights retained.                                    p. 206

Where the rights and powers conferred by a contract involve personal trust and confidence, the contract is not assignable.
                                    pp. 206, 207

*Decided January 26th, 1915.*

Appeal from the Circuit Court for Worcester County. In Equity. (PATTISON, C. J., JONES and STANFORD, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Geo. M. Upshur* (with whom was *Franklin Upshur* on the brief) and *Wm. F. Johnson* (who also filed a brief), for the appellant.

*John W. Staton* and *Geo. H. Meyers,* for the appellee.

URNER, J., delivered the opinion of the Court.

An agreement in writing under seal, dated "this ———— day of November," 1910, between Oliver D. Collins and William C. Tarr, of Worcester County, provided for the sale of a tract of six hundred and forty acres of land in that county by Mr. Collins to Mr. Tarr in consideration of the sum of eleven thousand dollars. It was recited that the property sold under the agreement had been purchased by Mr.

Collins on or about November 15, 1910, from the L. J. Houston Company. The transfer of the property to Mr. Tarr was agreed to be made on or before December 15, 1910, and the purchaser covenanted that simultaneously with the conveyance he would execute and deliver to the vendor a mortgage for the full amount of the purchase money based upon a bill obligatory payable on demand. It was further stipulated that Mr. Tarr should present for discount to the First National Bank of Snow Hill his demand note for $10,-000.00, which Mr. Collins agreed to endorse and the proceeds of which were to be placed to his credit. The note was stated to be for the same indebtedness to be represented by the mortgage. The agreement then provided: "That in the event of a sale of said property that the said William C. Tarr shall be entitled to the proceeds thereof up to thirteen thousand dollars plus interest on eleven thousand dollars from the date of the execution of the mortgage aforesaid to the date from such resale thereof and that the said Collins and Tarr shall divide equally the profits thereover in the proportion of forty per cent. to the said Oliver D. Collins and of sixty per cent. to the said William C. Tarr. The proceeds from such to be applied forthwith to the payment of said note and mortgage. And it is further agreed that no sale of said property shall be made except by the consent of the said Oliver D. Collins."

According to the terms of the purchase from the L. J. Houston Company, as shown by its receipt to Mr. Collins dated November 15, 1910, acknowledging the payment of $1,000.00 on account of the total price of $10,000.00, the balance of the purchase money was to be paid on or before December 15, 1910, and the vendee was then to receive a deed for the property. In view, however, of the agreement between Collins and Tarr the latter was substituted for the former as the grantee in the deed from the Company when the transaction was consummated. The conveyance was made on December 15, 1910, the remaining $9,000.00 of the purchase money having been paid at that time out of the pro-

ceeds of the $10,000.00 note to which we have referred, the
balance of the fund produced by the discounting of the note
being used to pay a note previously discounted by the same
maker and endorser to provide the first payment on the pur-
chase. Simultaneously with the delivery of the deed to Mr.
Tarr he and his wife executed a mortgage to Mr. Collins
which recited that it was given in consideration of the sum
of eleven thousand dollars advanced by the mortgagee for
the purchase of the property thereinafter described, and rep-
resented by the bill obligatory of the mortgagors dated De-
cember 15, 1910, and payable on demand with interest from
date.

The $10,000.00 note discounted in bank was made pay-
able in four months instead of being drawn as a demand note
as originally intended. There were four renewals of the note
for like periods and for the same amount. The last renewal
matured on April 15, 1912, but about two months prior to
that date Mr. Collins, by an instrument under seal, and in
consideration of the sum of $1,500.00, assigned to Milton L.
Veasey all his rights and interests under his contract with
Mr. Tarr of November, 1910, and further agreed to assign
to Mr. Veasey the $11,000.00 mortgage for the sum of $10,-
291.80 to be paid on or before April 15, 1912. Shortly be-
fore the execution of this instrument Mr. Collins had notified
Mr. Tarr that he intended to sell out his interest under their
contract and, to use his language: "Wash my hands of the
whole thing." The agreement between Collins and Veasey
provided that if the former should be obliged by law to ac-
cept payment of the mortgage, prior to its transfer to Mr.
Veasey, by any one legally entitled to make such payment
and demand its assignment, the sum of $1,000.00 out of the
consideration of $1,500.00 paid by Mr. Veasey should be re-
funded. Within a few days after the date of this agreement
the $10,000.00 note in bank was paid by Mr. Tarr with the
proceeds of a new note discounted by the bank upon which
he had secured the endorsement of Mr. Emerson G. Polk.
On the date of this transaction, which relieved Mr. Collins

of liability on his endorsement, he assigned to Mr. Polk the mortgage on the property in question to the amount of $10,-000.00 of the principal and some accrued interest. The remaining $1,000.00 of the mortgage debt was transferred to Mr. Veasey as an equivalent performance of the agreement to repay him that amount upon the contingency stated. This interest in the mortgage was later satisfied by payment to Mr. Veasey from the mortgagor. Mr. Polk assigned his portion of the mortgage debt to the First National Bank of Snow Hill as collateral security for the note bearing his endorsement.

On February 20, 1912, Mr. Veasey filed the pending bill of complaint against Mr. Tarr alleging that the plaintiff, as the assignee of the right of Mr. Collins under the agreement of November, 1910, is the owner of an equitable interest in the tract of land to which it refers, and is entitled to a due proportion of the profits which may be derived from a sale of the property, and charging that the defendant, without the plaintiff's consent, was preparing to cut down and remove and convert to his own use the growing timber which covers the greater part of the land and constitutes its principal value. It was averred that such action on the part of the defendant would cause irreparable injury to the plaintiff, and relief was sought by way of injunction. A preliminary writ was granted in accordance with the prayer of the bill. The defendant filed a demurrer, but before the questions it sought to raise were heard and determined, the plaintiff, after obtaining leave of Court for the purpose, amended the bill by alleging in substance that the provision in the contract between Collins and Tarr to the effect that no sale of the property should be made except by consent of Collins was of doubtful validity, but that the agreement was entered into not only for the purpose of a resale of the land as a whole, as stated in the original bill, but also with a view to a reasonably early sale, in order that the parties might participate in the profits arising from such resale in the proportions designated, and that the defendant was attempting to treat the

land as his exclusive property and was denying to the plaintiff any interest therein, notwithstanding the execution of the assignment under which he claims, and that the defendant was undertaking to remove the timber from the land under the pretense of being the sole owner. It was further alleged that when the property was purchased under the agreement between Collins and Tarr it was valued by them at an amount much in excess of the sum of $13,000.00, for the application of which the contract first made provision, and that it is now worth considerably more than that sum, and if sold as a whole, in pursuance of the agreement, the plaintiff will receive as his share of the profits a substantial return on his investment. The bill prayed that a receiver be appointed to sell the land and distribute the proceeds to those entitled under the agreement, and that in the meantime the preliminary injunction be made permanent and the defendant be restrained from selling, disposing of or encumbering the property.

A demurrer to the bill as amended was overruled, and the defendant then filed an answer admitting the allegation that he was about to remove the timber, but denying that the agreement required a sale of the land to be made, and asserting complete ownership in himself as against the plaintiff's claim of a concurrent interest. The testimony in the case established without dispute the essential facts we have mentioned, but it involved a serious conflict as to the understanding of the original parties to the agreement with respect to its real scope and purpose. Upon final hearing a decree was passed perpetually enjoining the defendant from cutting down and removing the timber growing upon the land, and from selling, disposing of or encumbering the property, except with the consent of the plaintiff. It was stated in the decree that the Court refrained for the time being from appointing a receiver, pending the sale or other disposition of the land within a reasonable period by mutual consent of the parties. From this decree the defendant has appealed.

It will not be necessary, for the purposes of our decision, to consider the parol evidence relating to the antecedent negotiations of the parties to the Collins-Tarr agreement as reflecting upon their intention in regard to a resale of the property, or to discuss the exceptions to the admissibility of such testimony, because we think the real understanding upon that subject is apparent from the terms of the contract. While the apportionment of the surplus proceeds of the land is provided for "in the event of a sale," yet it is clear from the other stipulations that this event was intended to be certain and not contingent and to occur within a comparatively brief period of time. The provisions for the financing of the transaction on Mr. Collins' credit required that the note discounted in bank and the bill obligatory secured by the mortgage should be made payable *on demand*. By virtue of a power of sale contained in the mortgage, and the right vested in the mortgagee to mature by demand the secured obligation, Mr. Collins was placed in a position to insist upon a sale of the land at such time as he deemed most suitable. In addition to the protection thus afforded to his interests, the contract provided that no sale of the property should be made without his consent. This was evidently not designed to operate as a general or permanent restriction upon the alienation of the property by the holder of the legal title. It merely contemplated an agreement by both the parties interested in the land upon the question of the price to be realized from a sale which they proposed to effect in the near future. It was certainly not the purpose of the contract that the application and apportionment of proceeds which it prescribed should be dependent upon the contingency of a sale at some indefinite and possibly remote period by the owner of the equity of redemption. The fact that the mortgage was taken for an amount in excess of the actual purchase price tends to support the view that it was executed in furtherance of a speculative enterprise and was not regarded as an ordinary investment. The various provisions of the contract, when considered together, are in our opinion consistent only with

the theory that its object was a resale of the land at a considerable profit and at an early date.

The record shows that Mr. Collins desired and endeavored to accomplish a sale, but did not succeed in securing the co-operation of the defendant, who urged that larger returns could be obtained by removing and selling the timber which gave the land its chief value. This attitude on the part of the defendant, and his preparation for carrying into effect the policy he preferred, were the causes which induced Mr. Collins to undertake the disposition of his contractual interests. As a result of his effort to accomplish that purpose he has been relieved of his liability on the purchase money note discounted in bank, and his mortgage indemnity for that indebtedness has been assigned to the new endorser, while his right to share in the proceeds of the sale of the property has been made the subject of assignment to yet another stranger to the original contract. In thus divesting himself of his interests under the agreement Mr. Collins has separated the liabilities which he had incurred from the right which he would have been entitled to assert. This course was plainly incompatible with the continued integrity of the agreement. The rights and liabilities of the respective parties to its execution were interdependent and indivisible. If Mr. Collins had proposed to enforce rather than to transfer the contract, his ability to maintain a suit for its specific performance would have depended upon his readiness to fully perform it on his part according to its terms. It is clear that he could not have demanded a sale of the land and a share of the proceeds unless he continued to furnish by his endorsement the financial credit upon which the venture was dependent. The release of his liability by the substitution of another endorser was the direct consequence of his notice to Mr. Tarr of his intention to dispose of his interests and "wash his hands" of the transaction. It is apparent from the terms of the memorandum of assignment from Mr. Collins to Mr. Veasey that this very result was anticipated. The stipulation in reference to the mortgage allowed its transfer to be postponed

until the date of the maturity of the existing renewal note, and was contingent upon an assignment not being exacted by some person legally entitled to make such a demand. It was evidently supposed that a substituted endorser would have that right, and when one was secured he immediately asked for and received an assignment of the mortgage, except as to $1,000.00 of the consideration it mentioned, which the mortgagor subsequently paid. The case, therefore, is one in which a party to an executory contract has caused its virtual rescission as to the burdens which it imposed upon him, and has attempted to assign to another the benefits which he might have claimed under its provisions. The assignee who brings this action is seeking to compel a sale and to share in the profits without having assumed the liability with which the right he asserts was inseparably connected and in consideration of which it was created. It is a well settled principle that rights which are coupled with liabilities under a contract cannot be assigned. 4 *Cyc.* 22; *Pollock on Contracts,* 8th Ed., 499; *Arkansas Valley Smelting Co.* v. *Belden Mining Co.,* 127 U. S. 379. The plaintiff's claim is directly opposed to the terms and policy of this rule.

But apart from this feature of the case an equally serious bar to an effectual transfer of the right here sought to be enforced is the fact that the sale was required to be made with the consent of the party who has undertaken to make the assignment. This provision, of course, contemplated a consultation and agreement as to the price and terms of the sale. The party in whose name the title was taken confided, as to those very important matters, in the judgment and goodwill of the other contracting party, and was willing to rely upon his disposition to be fair and reasonable in the giving or withholding of his consent. But no authority was given for the admission of a stranger into such a relationship. The contract clearly involved an element of personal trust and confidence, and the unvarying rule is that, in the absence of the mutual assent of the immediate parties, such an agreement is not subject to assignment. *Brantly on Contracts*

270; *Bishop on Contracts,* 2nd Ed., sec. 1182; *Elliott on Contracts,* sec. 1435; *Clark on Contracts,* 2nd Ed., 364; Case note to *Atlantic & N. C. R. Co.* v. *Atlantic & N. C. Co.* (147 N. C. 368), 23 L. R. A. (N. S.) 223.

The rule was thus stated in *Delaware County* v. *Diebold Safe Co.,* 133 U. S. 488, and in *Burck* v. *Taylor,* 152 U. S. 651: "A contract to pay money may doubtless be assigned by the person to whom the money is payable, if there is nothing in the terms of the contract which manifests the intention of the parties to it that it shall not be assignable. But when rights arising out of contract are coupled with obligations to be performed by the contractor, and involve such a relation of personal confidence that it must have been intended that the rights should be exercised and the obligations performed by him alone, the contract, including both his rights and his obligations, cannot be assigned without the consent of the other party to the original contract."

This doctrine was applied in the case of *Eastern Advertising Co.* v. *McGaw,* 89 Md. 72, to an attempted assignment of a contract for displaying the defendant's advertisement cards in street cars for a stated period. The cards were to be approved as to style and contents by the advertising company. As the contract thus involved the exercise of skill and judgment on the part of that agency its assignment to another company without the defendant's consent was held to be ineffectual to confer any of the contractual rights upon the assignee.

The principles we have considered are controlling upon the question as to the right of the plaintiff to enforce the agreement in controversy, and we must hold that his suit is not maintainable.

There were other defenses interposed which the learned Court below properly overruled, and which we do not find it necessary to discuss, but we are unable to concur in the conclusion, indicated in the decree, as to the efficacy of the assignment upon which the suit is predicated.

*Decree reversed, with costs and bill dismissed.*