## KRITZ *v.* MOON.

[No. 13,004. Filed October 3, 1928.]

6

*Eli F. Seebirt, Lenn J. Oare* and *George W. Omacht,* for appellant.

*Lemuel S. Darrow* and *Alfred E. Martin,* for appellee.

McMAHAN, J.—In January, 1925, appellant filed her complaint in the instant case against Marvin C. Moon, herein referred to as "appellee," and Delbert Neddo, for possession of certain real estate in St. Joseph county, and for damages for unlawful detention. On January 29, 1926, appellee, while in possession of the real estate in question, filed an answer in two paragraphs, the first being a general denial. The second paragraph alleges

that on May 10, 1915, appellant leased the land in controversy, a fifty-one-acre farm, to Edward B. Moon for a term of five years from the expiration of a prior lease dated August 21, 1914, which, by its terms, expired September 12, 1919; that the lease of May 10, 1915, contained an option wherein the "defendant" might purchase the farm for $5,000, $1,000 payable at time of execution of deed, and $4,000 in annual installments of $500; that appellant, in said lease and option, agreed with the answering defendant that any and all improvements made on the property should be applied upon the first payment of the purchase; that Edward B. Moon, in writing, assigned the lease of May 10, 1915, to appellee; that thereafter appellee paid the rent to appellant, who, knowing of such assignment, accepted such rent from appellee and made no objection to such assignment; that appellee had paid on the "contract to purchase" $1,600, and that, although requested so to do, appellant had refused to execute a deed to appellee, or return the money so alleged to have been paid by appellee.

At the time of filing such answer, appellee also filed a "cross-complaint" against appellant, the first paragraph of which alleges the execution by appellant and Edward B. Moon of the leases of August 21, 1914, and May 10, 1915; that in June, 1922, Edward B. Moon, in writing, assigned the last lease and option to appellee, who, before the expiration of the lease, paid appellant $1,600, that appellant refused appellee's demand for a deed; that appellee at all times had been and was ready and willing to give appellant a mortgage for the balance of the purchase money, and asking judgment for the $1,600 alleged to have been paid by Edward B. Moon on the purchase price.

The second paragraph alleges that on May 10, 1915, appellant, in writing, agreed to sell the land in controversy to Edward B. Moon for $5,000, that Edward B.

Moon made improvements thereon in value in excess of $1,600, and assigned his right and interest to appellee; that, pursuant to and after the assignment, appellee gave appellant a statement of the cost of the improvements and offered her in addition thereto $1,000, and his notes and mortgage on the land to secure the same, and demanded that appellant convey the real estate to him, which she refused to do, although appellee and his assignor had performed all the conditions of the contract which they were required to perform, and demanded judgment for $2,500 because of appellant's alleged breach of the contract.

The lease of May 10, 1915, a copy of which is filed with and made a part of the cross-complaint, gave Edward B. Moon an option to purchase the real estate at any time before the expiration of that lease, which, by its terms, expired September 12, 1924, for $5,000, payable as follows: $1,000 at time of execution of deed, and $4,000 in annual installments of $500, to be evidenced by the promissory notes of Edward B. Moon and secured by a mortgage on the leased real estate. The lease also provided that the cost of any improvements made to the property by Edward B. Moon at his own expense should be deducted from and applied on the first payment of the purchase price, at the time of the execution of the deed. The covenants of this lease were, by the terms thereof, made binding upon the heirs, executors and administrators of the parties thereto.

No question as to the sufficiency of either paragraph of cross-complaint or of the second paragraph of answer was presented to the trial court or to this court. In this connection, however, we call attention to the fact that neither answer nor cross-complaint alleges an acceptance of the option to purchase. Attention is also called to the fact that at the time the answer and cross-complaint were filed, and at the time of trial and rendi-

tion of judgment, which was seventeen months after the expiration of the lease, appellee was in possession of the land in controversy. As to the right of one in possession of real estate under a contract of purchase to maintain an action to recover money paid on the contract without rescinding and surrendering, or offering to surrender, possession, see *Brumfield* v. *Palmer* (1844), 7 Blackf. (Ind.) 227; *Calhoun* v. *Davis* (1851), 2 Ind. 532; *Wiley* v. *Howard* (1860), 15 Ind. 169, *DeFord* v. *Urbain* (1874), 48 Ind. 219; *Gwynne* v. *Ramsey* (1884), 92 Ind. 414; *Refeld* v. *Woodfolk* (1859), 63 U. S. 318, 16 L. Ed. 370; *Hurst* v. *Means* (1853), 2 Swan (32 Tenn.) 594.

In October, 1925, appellant filed a complaint against appellee and one Wilcox, a tenant under appellee, to quiet her title to the premises and to enjoin them from removing therefrom the corn crop raised thereon by Wilcox after the expiration of the lease. To this complaint, appellee filed a cross-complaint alleging and setting out the two leases; the assignment by Edward B. Moon to appellee of the last lease and option; the payment of rent from July, 1922, to September 12, 1924, by appellee; that Edward B. Moon made improvements on the land to the value of $1,600; that in July, 1922, appellee exercised his option to purchase the land and tendered appellant $1,000, and six notes each for $500, signed by appellee, payable 1, 2, 3, 4, 5 and 6 years after date and secured by a mortgage on the land and signed by appellee and his wife; that appellant refused to comply with appellee's demand for a deed; that in August, 1924, appellee again tendered appellant $1,000 in cash and six notes for $500 each, secured by a mortgage on the land and demanded a deed; that appellant refused to accept the said tender, and to execute the deed; that the improvements made on the property exceeded the $1,000 to be paid on execution of the deed; that the improvements to the extent of $1,000, the $1,000 tendered

and the notes for $3,000, aggregated the purchase price; that appellee exercised his option to purchase and fully performed the contract on his part, but that appellant refused to carry out the contract and convey the property to appellee, and asking judgment for the value of the improvements made by "appellee" or for a specific performance of the option.

The two causes were tried together, without jury, and on February 19, 1926, separate judgments were rendered. In the action for possession and for damages for unlawful detention, the court found appellant was entitled to the possession of the farm and to $238 for unlawful detention, and that appellee Moon was entitled to recover damages on his cross-complaint in the sum of $2,272. Judgment was rendered in favor of appellant for possession and in favor of appellee for $2,034 damages. In the second action, there was a decree quieting appellant's title and awarding the crop raised in 1925 to appellee and Wilcox. Appellant's motion for a new trial in the first action was overruled, hence this appeal.

Appellant contends that the option given Edward B. Moon to purchase the land was not accepted in accordance with the terms of the option, and that the option was not assignable to the extent that the assignment to appellee gave him the right or option to purchase the land and substitute his notes and mortgage for the notes and mortgage of Edward B. Moon.

According to the terms of the first lease, appellant was to pay all taxes and keep the premises in good repair during the life of the lease, and the lessee was to keep the premises in a "husbandlike manner." The option contract in the second lease, without releasing appellant from the obligation imposed by the first lease, to keep the premises in good repair, provided that, if Edward B. Moon made any "improvements" to the property at his expense, and accepted the option to purchase, he was to

be allowed a credit on the first payment of purchase price for the cost of such improvements.

If Edward B. Moon made no improvements on the land and accepted the option to purchase, he would have been required to pay $5,000, $1,000 cash and the balance of $4,000 by giving his personal notes secured by a mortgage. If he made improvements costing $1,000, he would have been required to give but $4,000 for the land, all evidenced by his notes secured by mortgage— an anomalous situation, and one that involved personal confidence in Edward B. Moon and one coupled with financial liabilities on the part of Edward B. Moon. It is a contract that the average person would not make with a stranger. It is such a contract that a person would make only with one in whom he had confidence. The whole of the purchase price might be evidenced by the promissory notes of the purchaser. And, as was said in *Tarr* v. *Veasey* (1915), 125 Md. 199, 93 Atl. 428: "It is a well-settled principle that rights which are coupled with liabilities under a contract cannot be assigned." To the same effect, see *Sprankle* v. *Trulove* (1899), 22 Ind. App. 577, 54 N. E. 461; *Arkansas Smelting Co.* v. *Belden Co.* (1888), 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 248; *Rudd* v. *Savelli* (1884), 44 Ark. 145; *Hussey* v. *Roquemore* (1855), 27 Ala. 281; *Smith* v. *Pitts* (1909), 57 Tex. Civ. App. 97, 122 S. W. 46; *Menger* v. *Ward* (1895), 87 Texas 622, 30 S. W. 853; *Hounchin* v. *Salyards* (1911), 155 Iowa 608, 133 N. W. 48; *Edison* v. *Babka* (1896), 111 Mich. 235, 69 N. W. 499; *Sims* v. *Cordele Ice Co.* (1903), 119 Ga. 597, 46 S. E. 841; *Tifton, etc., R. Co.* v. *Bedgood & Co.* (1902), 116 Ga. 945, 43 S. E. 257; *Rice* v. *Gibbs* (1894), 40 Nebr. 264, 58 N. W. 724; *Thomas-Bonner Co.* v. *Hooven, etc., Co.* (1920), 284 Fed. 377; *Vanderlip* v. *Peterson* (1906), 16 Manitoba L. Rep. 341.

It is well to keep in mind that the option contained in

the lease was not a contract for the sale of the land. It was an offer by appellant, which had to be accepted within the specified time in the precise terms named in the option before it could become a binding contract. If it was not so accepted, it did not become a contract. *In re Aurora Gaslight, etc., Co.* (1916), 64 Ind. App. 690, 113 N. E. 1012.

The judgment in favor of appellee is based upon the second paragraph of his cross-complaint, which proceeds upon the theory that the contract of May 10, 1915, giving Edward B. Moon an option to buy the land, was a binding agreement on the part of appellant to sell the land, and that no acceptance by Edward B. Moon or by appellee was necessary other than the alleged tender of performance to convert the option into a contract of sale. The evidence introduced by appellee in support of his cross-complaint is in keeping with that theory. There is no claim or contention that Edward B. Moon ever accepted the option. He was a witness for appellee, and, on direct examination, was asked if he ever exercised the option. In response to that question, he said: "No, I never made any tentative purchase, I talked to her about it once or twice. Of course, I was waiting for the expiration of the lease." He was then asked whether he exercised his option to purchase by making any improvements, and he answered: "I made the improvements, yes, to the extent of the provision of the contract and the option and that was the first step." Whether he exercised the option by making the improvements is a question of law and not of fact. He might have accepted the option without making any improvement, and he might have made some improvements without accepting the option. He never in any manner notified appellant that he accepted the option. The making of the improvements did not amount to the acceptance of the option. The burden was on

appellee to show, by clear and satisfactory evidence, an unequivocal and unconditional acceptance of the offer of appellant, without any variance of any kind between the acceptance and the offer. *Egger* v. *Nisbitt* (1894), 122 Mo. 667, 27 S. W. 385, 43 Am. St. 596.

Assuming that appellee, as the assignee of Edward B. Moon, had a right to accept the option to purchase, his acceptance, in order to bind appellant, had to be in accordance with the terms imposed by the option. As was said in *Minneapolis, etc., R. Co.* v. *Columbus Rg. Mill. Co.* (1886), 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376: "A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiations, unless the party who made the original offer renews it, or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it."

Proffer of performance is an acceptance of an option, when the proffer is in accordance with the terms of the option. *Boyden* v. *Hill* (1907), 198 Mass. 477, 85 N. E. 413. If the offer is not in the terms of the option, it is not an acceptance. Appellee never formally notified appellant that he accepted the option as contained in the lease. He acted upon the assumption that tendering notes signed by himself and his wife secured by a mortgage upon the land and a demand upon appellant that she execute a deed conveying the land to him and his wife, amounted to an unqualified acceptance of the option. If it be conceded that the option was assignable, and that Edward B. Moon assigned the same to appellee, that assignment did not have the effect of changing the terms and conditions upon which appellant offered to sell the property. As before stated, if Edward B. Moon made improvements costing $1,000 or more, and accepted the option, he could have

paid the whole of the purchase price by giving his personal notes secured by a mortgage on the property purchased. When appellee tendered the notes of himself and his wife, it amounted to a new offer on his part and a rejection of the terms of the option. If there had been a prior acceptance of the option, appellant, by refusing to convey and by repudiating the contract thus brought into existence by reason of such acceptance, might have waived performance by appellee. In the absence of an acceptance of the strict terms of the option, appellant had the absolute right to refuse to convey the property to appellee or to appellee and his wife.

The evidence bearing upon the question of acceptance is conflicting. Appellee's party examination was taken about two weeks before the trial. At that time, he testified that he exercised the right to purchase under the option by tendering appellant $1,000 in the form of a certificate of deposit, and by tendering her six $500 notes signed by himself and his wife; that he also tendered her a mortgage upon the land securing said notes; that, before making such a tender, his brother, Arthur Moon, an attorney, prepared the notes and mortgage and a deed from appellant conveying the land to appellee and his wife; that his brother Arthur tendered the money, presented the deed, and the mortgage and the notes, and said, "Here we are according to the contract, option to purchase this farm, ready to fulfil our part of this agreement. Nothing further was said." He also testified that in August, 1924, he tendered appellant $1,000 and six $500 notes signed by himself and his wife, a part of the $1,000 being in cash and the balance in a certificate of deposit; that the notes and mortgage tendered in 1922 and 1924 were the same. On the trial, he testified that he and Arthur visited appellant at her home in July, 1922; that, prior to this visit, some notes and a mortgage executed by himself and wife and a certificate of deposit

for $1,000 and a deed from appellant were prepared, the certificate of deposit being made payable to appellee and indorsed by him; that Arthur told her they had the papers prepared for taking over the farm according to the agreement and that they had come to fix up the deal, that appellant refused, saying she would not sell the place; that in August, 1924, they went back to exercise the option; that prior to that time they had eight $500 notes drawn up and signed by himself and wife, and a mortgage to secure the same, and a deed for appellant to sign conveying the land to appellee and his wife; that, at the time, he had $1,000 cash, and a certificate of deposit or a certified check; that on that occasion, his brother said: "we are here, Mrs. Kritz, to take over the farm; we have the papers all prepared and ready for your signature; we are ready to pay for it as agreed in our contract." At this time, he claimed credit of $1,000 on account of improvements made by Edward B. Moon.

Arthur Moon, in testifying to the transaction in July, 1922, described the notes, mortgage and deed which had been prepared. He testified there were eight $500 notes, instead of six as testified to by appellee. He did not undertake to testify as to anything that was said or done on that occasion. Testifying as to what took place in August, 1924, he told about preparing a new set of papers before going to see appellant; that he prepared a deed for appellant to sign, conveying the land to appellee and his wife, eight $500 notes which were signed by appellee and his wife and a mortgage on the land signed by them securing these notes. In relating what he said to appellant on that occasion, he said: "I said, 'Mrs. Kritz, we are here to close up the contract that you made with my brother Bruce in Chicago, and which my brother Marvin here has taken over, for the purchase of the farm in Union township. My brother Bruce made a lot of improvements on the farm and, it

has cost sixteen to eighteen hundred dollars, and we are entitled, according to the contract, to a credit of a thousand dollars, which is the initial payment, if you want to allow us that. If you have any doubt that these improvements were made, we will come out to Lakeville and check them up. We have a thousand dollars in cash here to pay you for those improvements. We have a thousand dollars in cash if those improvements weren't made and we insist now upon our deed for this contract; and if the improvements are not of the extent of a thousand dollars, we will pay the difference in cash.'" He testified he did not offer her $1,000 cash without limitations; that he did not offer her any of the money; that it was all contingent upon the limitation that they would go out to the farm and check up the amount of the improvements. It was contingent upon a settlement of the improvements; and that he demanded she execute the deed, which she refused to do, saying she would not sell the land. There was no other evidence tending to prove an acceptance of the option. Appellant, in her testimony, says the transactions about which appellee and his brother testified never took place. Appellee was not able to produce the deeds, mortgages, notes and certificate of deposit about which he and his brother testified, although there is no claim they had been destroyed.

The Supreme Court of West Virginia, in a leading case upon the subject of options and their acceptances, said: "In order to convert such a proposal into a contract, it must be accepted by the other party; and the assent of the parties to the terms thereof must be mutual, and intended to bind both sides, and must coexist in the minds of both parties at the same moment of time. The acceptance must be unconditional, and as broad and comprehensive as the proposal itself, and must include all of

its terms and conditions without modification or change. If to the acceptance a condition be affixed, or any modification or change in the offer be requested by the party to whom the offer is made, this, in law, constitutes a rejection of the offer." *Weaver* v. *Burr* (1888), 31 W. Va. 736, 8 S. W. 743, 3 L. R. A. 94.

The contract giving Edward B. Moon an option did not give him any title to the land, either legal or equitable, and his assignment of his rights under the contract passed no title to his assignee. *Pollock* v. *Brookover* (1906), 60 W. Va. 75, 53 S. E. 795, 6 L. R. A. (N. S.) 403; *Rease* v. *Kittle* (1904), 56 W. Va. 269, 49 S. W. 150. "An option is not an actual or existing contract for the sale of property. It is a proposition by one party, for a consideration, which must be accepted within the specified time, in the precise terms named, before it becomes a binding contract. If not so accepted, it does not become a contract, and the option is at an end." *Wheeling, etc., R. Co.* v. *Wheeling Coal Railroad Co.* (1923), 94 W. Va. 536, 119 S. W. 551, citing *In re Aurora Gas light, etc., Co., supra; Breen* v. *Mayne* (1909), 141 Iowa 399, 118 N. W. 441. Unless payment of purchase price, or tender thereof, is a condition precedent, it is not essential to convert an option into a contract, but only an element of performance. In the instant case, the option did not require the payment of the purchase price, or any part of it, to convert the option into a contract. It did not require anything to be paid by way of acceptance. Impliedly, it gave the optionee the right to elect to accept the terms of the option as written and thus make a contract. Performance of the contract was to follow the acceptance or the making of the contract. Until there was an unequivocal acceptance, there was no contract.

Where one party to a contract to sell repudiates the contract and refuses to perform, a tender of performance

by the other party is deemed to be waived. ■■ There must, however, be a contract before it can be repudiated. The first question to determine, therefore, is whether there was an unequivocal and unmodified acceptance of the terms of the option. One to whom an offer is made is at liberty to accept wholly or to reject wholly. One of these things he must do. He cannot accept in part and reject in part. An offer to accept on terms differing from those offered is a rejection. It puts an end to the negotiations in so far as the original offer is concerned.

Acceptance of the option, in the instant case, was a condition precedent to an action for damages for breach of contract. Pomeroy, Specific Performance ■ (2d ed.) §334, says: "Where a contract is thus conditional—that is, where it rests upon a condition precedent—until the performance of the condition it cannot be enforced, because until that time, there is no true contract."

"The rule is unvarying, and the authorities uniform, that in order to constitute an acceptance of an option or an offer to sell, the acceptance must be unconditional. There must be no new terms imposed, and no departure from those offered." *Crancer* v. *Lareau* (1924), 1 Fed. (2d) 117; *James* v. *Darby* (1900), 100 Fed. 224; *Whitaker-Glessner Co.* v. *Clark* (1924), 98 W. Va. 19, 126 S. E. 340; *Langellier* v. *Schaefer* (1887), 36 Minn. 361, 31 N. W. 690.

The option in question gave Edward B. Moon the right to buy the land and provided that he might pay $4,000 of the purchase price by giving his notes. Appellant never agreed that she would sell the land to any other person and accept the notes of such other person for any part of the purchase price. She never agreed that Edward B. Moon, if he made improvements costing $1,000, might thereafter without accepting the option,

assign his option and confer upon such assignee the right to accept the option and claim credit on the purchase price for $1,000, and that the notes of such assignee should be substituted for the notes of Edward B. Moon.

If it be conceded that appellee, by virtue of the assignment of the option, was in position to accept the same, it is clear that his acceptance was conditional upon appellant allowing him a credit for improvements claimed to have been made by Edward B. Moon nine years before such acceptance and that appellant should convey the land to appellee and his wife, and accept their notes for the whole of the purchase price to be actually paid for the land. The right of Edward B. Moon to a credit of $1,000 on the purchase price because of improvements made by him was a personal privilege granted to him. He never accepted the option and had no right to a credit on the purchase price because of such improvements. Having no right or interest in the land, and no right of action against appellant because of such improvements, he had no interest in the land nor any right of action that he could assign to appellee. See *Rochester Lantern Co.* v. *Stiles & Parker Co.* (1892), 135 N. Y. 209, 31 N. E. 1018; *Bostwick* v. *Hess* (1875), 80 Ill. 138. Construing the testimony most favorable to appellee, it clearly shows that appellee's alleged acceptance was inseparably connected with the demand that appellant deed the land to appellee and his wife, and accept their notes for the whole of the purchase price, and that these terms are materially different from the terms named in the option and amounted to a rejection of the option. This conclusion necessarily leads to a reversal of the judgment. We are prompted to add, however, that if there had been an unqualified acceptance of the option, there could, under the issues and the evidence, have been no recovery or allowance because of

any improvements claimed to have been made by Edward B. Moon.

The measure of damages under the issues would have been the difference between the value of the land as fixed by the option and the value at the time of the refusal to perform.

We also call attention to the fact that almost all of the so-called improvements made by Edward B. Moon were in the nature of repairs, which appellant was required to make, and were not improvements for which Edward B. Moon could have claimed credit, if he had accepted the option. Painting and papering the house, putting glass in the windows, rebuilding chimney tops, repairing windmill and pump, fixing the barn floor, painting the barn, rearranging the stalls in the barn, fixing roof, repairing fences, liming and fertilizing soil, etc., must all be construed and held to be repairs as distinguished from improvements for which Edward B. Moon could have claimed credit had he exercised the option to purchase.

The lease in question expired September 12, 1924. Appellee continued in possession of the property thereafter for a period of seventeen months and seven days. Appellant was entitled to recover judgment for unlawful detention from September 12, 1924, to the date of the judgment, a total of $292, plus interest. It follows that the assessment of the amount of recovery on appellant's complaint was too small.

Several witnesses for appellee, without objection, testified as to the value of the farm at the time of the execution of the lease containing the option to purchase. While no question is presented concerning the admissibility of this testimony, we suggest that the parties by their contract fixed the value of the farm at that time.

Judgment reversed, with directions to sustain appel-

lant's motion for a new trial and for further proceedings consistent with this opinion.