PARSONS v. GILBERT, HEDGE & Co.

1. **Specific Performance:** DELAY: VENDOR AND VENDEE. Where a receiver appointed to take charge and dispose of the property of a partnership made a sale of the real estate, with the understanding that the purchasers were to receive a perfect title, and it subsequently appeared that the receiver could not give a good title until the determination of a suit in his favor some months afterward, it was *held* in an action by the receiver to compel specific performance, that the property being purchased for immediate use, the purchasers could not be compelled, after a delay of four months in perfecting the title, to execute the contract of purchase.

*Appeal from Des Moines District Court.*

THURSDAY, DECEMBER 7.

N. P. SUNDERLAND filed a petition in the Circuit Court of Des Moines county, setting forth, in substance, that he and one R. C. Kendall were partners and as such owned the property in controversy; that said partnership was largely indebted, and said Kendall having died his heirs were made parties; and the prayer of the petition was that the real estate in controversy be charged with the payment of the partnership debts; that a receiver be appointed and the property sold.

A decree in accordance with the prayer of the petition was rendered. The plaintiff being appointed receiver and having, in accordance with the decree of the court, sold the property at public auction to the defendants, for the sum of $16,100, and they having declined to complete the contract of purchase, this action is brought to compel a specific performance, which the District Court decreed and the defendants appeal.

*Thomas Hedge, Jr.* and *Chas. H. Phelps*, for appellants.

*J. & S. K. Tracy, Power & Antrobus* and *P. Henry Smyth,* for appellee.

SEEVERS, CH. J.—It is conceded that the real estate in controversy was not conveyed to Sunderland and Kendall as part- ners, but to each individually. There was nothing on the face of the conveyances, nor any writing showing it to be partnership property. The facts upon which Sunderland based his claim existed wholly in parol. The heirs of Kendall made no defense. Robert K. Griffith, one of said heirs if the property did not belong to the partnership, owned the one undivided fifteenth part. At the time Sunderland filed his petition, and the rendition of the decree, said Griffith was a minor, and although served with notice no guardian *ad litem* was appointed, but he appeared by attorney. It is conceded that the decree did not bind and cut off the right and interest of said minor, if any he had.

*1. SPECIFIC performance: delay: vendor and vendee.*

The defendants, after the purchase, caused the title to be investigated, and upon finding they could not obtain a full and perfect title, declined to comply with their contract; whereupon plaintiff commenced an action against said Griffith and others, asking substantially the same relief and making the same allegations as in the original petition. A decree was rendered in this action on the 28th day of August, 1874, and there is no pretense but that the interest of said Kendall was cut off by this decree.

The sale to the defendants was on the 28th day of April, 1874. It is insisted the sale made by the receiver was a judicial sale and that defendants purchased at their own risk, and are bound to pay the purchase price whether the title be perfect or not. In support of this proposition, *Dean v. Morris,* 4 G. Greene, 313, and other authorities, are cited.

The abstract states: "It is conceded by counsel on both sides, that in bidding in the property in controversy at $16,100, it was understood by all the parties that the bidders were to receive a perfect title to all the real estate in controversy, free from all incumbrances."

This means something more than that both parties supposed or understood the title to be perfect, otherwise there was no object in making it. It must and can only mean that the defendants and other bidders were to have a good and perfect

title and were not compelled to bid at their peril. It is but reasonable and proper such an agreement should be made, for it is presumed the defendants well understood they were not to have a warranty deed, but could obtain a quitclaim only. It became important, therefore, that they should examine the title before bidding or have the opportunity of doing so before they completed their purchase, and this without doubt was the object and intent of the agreement. The plaintiff offered the real estate for sale, and he stipulated and conceded the purchaser should have a perfect title, thus naturally and probably inducing the latter to waive an examination of the title, and now the former says he had no authority, or that he did not mean what his words fairly import. To permit such a construction to prevail would, it seems to us, be giving sanction to something very nearly akin to a deliberate fraud. .

Counsel cite *Vandever v. Baker*, 13 Penn. St., 420, and *Walden v. Gridley*, 36 Ill., 532. The former holds that the declarations of the crier are not evidence to contradict the terms of sale read by him, and the latter that *caveat emptor* applied to such sales. In neither case was there any agreement like that in this case. The defendants were not bound to complete their purchase and assume the risk of litigation with the minor Griffith. It is true the court in the second action adjudged that he had no interest, but this could not be foretold at the time defendants declined to complete the purchase. *Prima facie* he had an interest; this the plaintiff conceded by bringing the second action.

The defendants at the time of the purchase were engaged in the lumber business, and purchased the property to pile lumber on, and desired it for immediate use, and failing to get a good title to the property they got "other property in its place."

. About four months intervened between the purchase and the time plaintiff was able to convey a perfect title. No time was stipulated within which the conveyance should be made. It should, however, be made within a reasonable time, depending upon the uses for which it was purchased. The delay alone would not be sufficient to justify the defendants in

refusing to execute the contract. But such delay, taken in connection with the fact that the property was purchased for immediate use, and other property procured in its place, presents a very different question.

The defendants could have taken possession at once it is said, and this is probably true, and had they done so, as it turned out, they would have incurred no liability in so doing. But they were not bound to take this risk, be it great or small. They had the perfect and absolute right to decline to have anything whatever to do with the property until that for which they bargained, a "perfect title," could be given them. The general rule is that a specific performance will not be decreed except in cases where it would be strictly equitable to do so. Story's Equity, § 750. Nor will courts so decree where the contract is founded in fraud * * * or where from a change of circumstances or otherwise it would be unconscientious to enforce it. Story's Eq., § 750 a; *Harper v. Sexton*, 22 Iowa, 442. Undoubtedly the specific execution of contracts rests in the sound discretion of the court. *Auter v. Miller*, 18 Iowa, 405. And it is regarded as equally well settled if the vendor is unable to convey a perfect title at the time of the sale, and he afterward becomes able to do so, that a specific performance will not be decreed at the suit of the vendor if it appears the vendee has sustained actual and serious injury. *Nodine v. Greenfield*, 7 Paige, 544.

Under the testimony the defendants were prejudiced by the delay. They testify the property was purchased for immediate use, and that they procured other property in its place. There is nothing contradictory to this and it seems reasonable.

Now if they procured other property in the place of this, it must necessarily result they would be prejudiced by being compelled to now take and pay for this property.

The authorities cited by counsel for the appellee are not in conflict with the views herein expressed. For we concede that mere lapse of time alone is not sufficient, nor is it required the conveyance should be made at once, but within a reasonable time is all that is required. We place the ruling on the ground that the defendants have suffered injury, and that it

would be unconscientious and inequitable to compel them now to perform their contract.

The judgment of the court below will be reversed and the cause will be remanded with directions to the court below to dismiss the petition, or at the option of the defendants a decree will be entered in this court.

REVERSED.