DEEMER, J., agrees to conclusion.

---

C. H. HOPWOOD, Appellant, v. FRED McCAUSLAND, Appellee.

Vendor and Purchaser: OPTIONS: ENFORCEMENT OF. Code, sections 4299-4301, providing contracts for the sale of or agreement to sell any interest in real estate shall not be forfeited unless written notice of intention to forfeit is served on the vendee, do not prevent the making and enforcement of options to purchase land.

Option Defined.    An option for the purchase of real estate is
2    merely a right of election to purchase, which, when exercised,
becomes a contract.

Reformation of Contract:    SPECIFIC PERFORMANCE.    Equity will
3    reform a writing entered into under a mistake as to the legal
effect of the words used, and when such is the fact, specific
performance will be denied.

Specific Performance:    ESTOPPEL.    Defendant gave plaintiff an
4    option or contract to purchase land, agreeing that plaintiff
should notify him of his final conclusion in the matter.
Within the time agreed plaintiff's agent notified defendant
that he could not raise the money and that unless defendant
extended the time, which he refused to do, the option would
be abandoned.    Thereafter defendant made valuable improve-
ments and leased the land for a term of years.    *Held,* that
plaintiff's acts and conduct estopped him from enforcing
specific performance.

*Appeal from Monona District Court.*—HON. GEO. W.
WAKEFIELD, Judge.

SATURDAY, APRIL 11, 1903.

SUIT in equity for the specific performance of an
agreement to sell and convey real estate.    Defendant
pleaded abandonment of the contract and an estoppel, and
also asked reformation of the contract on the ground of
mistake.    The trial court dismissed plaintiff's petition,
and he appeals.—*Affirmed.*

*Jepson & Jepson, T. F. Bevington* and *J. L. Kennedy*
for appellant.

*McMillan & Kindall* for appellee.

DEEMER, J.—On the 7th day of September, 1898, the
parties entered into the following contract, which was
partly in writing and partly in print, to wit:

"That for and in consideration of $13,920 dollars, pay-
able as follows: Fifty dollars cash, the receipt of which is

hereby acknowledged, nine hundred and fifty dollars October 7th, 1898, three thousand six hundred and forty dollars, March 1, 1899, nine thousand two hundred and eighty dollars March 1, 1904, at 7 per cent. interest from March 1, 1899, to be secured by first mortgage on real estate hereinafter described.

"The said Fred McCausland party of the first part has bargained and hereby sells and agrees to convey by warranty deed, on or before March 1, 1899, to the party of the second part or his assigns the farm of said party of the first part situated in Monona county state of Iowa, more particularly described as follows to wit: The east half of section thirty-three and the east half of the west half of section thirty-three, all in township eighty-five, range forty-five containing 480 acres, more or less according to government surveys, together with all and singular the appurtenances thereto belonging, and to deliver such conveyance as aforesaid together with abstract of title showing perfect title in said first party free from incumbrance except tax for 1898. And the first party further agrees for the same consideration to deliver full possession of said real estate to said second party or his assigns on or before March 1, 1899. It is hereby agreed that if the said second party fails to pay nine hundred and fifty dollars October 7th, 1898, as above stated this contract shall be null and void and terminate by limitation and the first party shall keep the said fifty dollars as a forfeiture and damages. Party of the second part to pay $1.00 per acre for fall plowing done after this date."

This is claimed on the one side to be a contract for the sale of the land, and on the other as merely an option to purchase; and defendant also claims that if it is not, according to its terms, an option, it should be reformed so as to be construed as such, to meet what he alleges was the mutual intent of the parties. Fifty dollars was paid by plaintiff at the time the contract was made, but he

failed to make any other payments.    On September 29, 1899, he tendered to defendant the amount due on the contract, and demanded a deed; and again, on March 14, 1900, he made a further written tender and demand of performance.    Defendant served no notice on plaintiff of his intention to forfeit the contract, but claims that the contract was abandoned, and that, in any event, plaintiff is estopped by his acts, conduct, and declarations from enforcing the contract.    There is a decided conflict in the evidence which can be explained on no other theory than that one of the parties is testifying falsely.

Section 4299 of the Code of Iowa provides, in substance, that a contract for the sale of real estate, providing for a forfeiture, shall not be forfeited or canceled

1. OPTIONS: enforcement of. unless a written notice of intention to forfeit, and the reasons therefor, is served upon the vendee under the contract; and section 4300 provides, in effect, that within thirty days from the service of such notice the vendee under the contract has the right to perform any of the conditions broken, and, if the conditions broken are so performed within thirty days, then the right to forfeit for defaults before the service of the notice, is terminated.    Section 4031 provides that the two foregoing sections shall be operative in all cases where the intention of the parties, as gathered from the contract and surrounding circumstances, is to sell or to agree to sell an interest in real estate, "any contract or agreement of the parties to the contrary notwithstanding."    There is nothing in these sections forbidding the making of options, and such options, when made, will be respected and enforced.

An option is not a sale.    It is not even an agreement for a sale.    At best, it is but a right of election in the party receiving the same to exercise a privilege, and only

2. OPTION defined, when that privilege has been exercised by acceptance does it become a contract to sell. Warvelle on Vendors (2d Ed.) section 125.

The contra.·t which we have quoted is somewhat ambiguous, but there is no doubt in our minds that the parties understood when it was made, that it was a mere option—

3. REFORMA- surely the defendant so understood it—although, by reason of its being partly in print and partly in writing, the words used may not have expressed this intent. In such a case a court of equity may well refuse to decree' specific performance. Waterman on Specific Performance, section 152. After a careful ·examination of the record, we are convinced that all parties to the contract understood that it was to be a mere option, rather than a sale, and that the $50 payment recited in the contract was paid for an option to purchase, but, owing to a mistake—perhaps of law—in the choice of terms, such option was not clearly expressed. Courts of equity in this state will reform contracts entered into under mistake as to the legal effect of the terms used. *Lee v. Percival,* 85 Iowa, 639, and cases cited. But whether this were true or not, such mistake, when clearly shown, is good ground for refusing specific performance of the contract. The relief asked in such a case is purely equitable, and when, under the circumstances disclosed, such relief would be manifestly unjust and inequitable to one or both of the parties, it will be denied. *Parsons v. Gilbert,* 45 Iowa, 36; *Rutland Co. v. Ripley,* 10 Wall. 339 (19 L. Ed. 955).

Plaintiff's conduct and declarations both prior and subsequent to the making of the agreement lend support to the conclusion that the contract was to be consummated

4. SPECIFIC on October 7, 1898, and that the $50 payment was for a mere option. Aside from this, however, it was agreed—plaintiff being a nonresident of the state—that one Bird, an agent who had conducted the negotiations between the parties, should notify the defendant on or before October 7, 1898, of plaintiff's final conclusion in the matter. On or about October 1st of that

year, Bird came to defendant, representing he had heard from plaintiff, and stated to him (defendant) that Hopwood was unable to raise the $1,000 called for by the contract, and that, unless he (defendant) would give Hopwood an extension of time on the option, it would have to be abandoned. Defendant refused to grant the extension, and afterward, and on the 7th of October, rented the land, and proceeded to make improvements thereon amounting, in all, to something like $1,200. Defendant saw Hopwood some time the following March, and a conversation was then had between them, the purport of which is in sharp dispute. Taking the whole of the testimony, we are satisfied that plaintiff, through his agent, notified defendant, in effect, that he could not comply with his contract, because plaintiff had not then been able to sell his Illinois land, from the proceeds of which he was to make the $1,000 payment on the land, and that the optional contract or contract for the sale of the land was abandoned; that defendant, in view of the statements made to him by plaintiff and his agent, was justified in believing that plaintiff had abandoned it; and that, on the strength of such statements, defendant executed the lease and made the improvements on the farm hitherto mentioned. Under such circumstances, plaintiff is clearly estopped from insisting on specific performance of the contract. Had defendant attempted to collect the purchase price of the land, under the circumstances disclosed by this record, we apprehend there would be little doubt of his defeat. Mutuality of contract is essential to a valid decree for specific performance. This is hornbook law, and needs no fortification by authority.

The pith of this whole controversy lies in the fact that between the making of the contract and the attempt at its enforcement the land advanced in value about $7.50 per acre. Had it decreased, instead of increased, we should not have been troubled with this case. We are satisfied

that when the contract was made, and the $50 paid, both parties understood the agreement to be a mere option; that plaintiff, acting on this belief, and being unable to obtain the money with which to complete the $1,000 payment, abandoned the matter, and not until after consulting with counsel, when he learned of the rapid increase of land values, did he attempt to enforce it; that this attempt was not made until more than a year after the original agreement was executed, which was after the defendant had leased the land for a long term of years, and made many and valuable improvements upon the land. So finding, the result is apparent.

The decree is right, and it is AFFIRMED.