## IN RE AURORA GASLIGHT, COAL AND COKE COMPANY.

[No. 9,124. Filed October 24, 1916. Rehearing denied February 1, 1917. Transfer denied April 6, 1917.]

1. CONTRACTS.—*Construction.*—The form and names of written instruments are not of controlling importance, but the law will give effect to the real and dominant intention of the parties when definitely ascertained. p. 697.

2. LANDLORD AND TENANT.—*Lease and Option.—Construction.*—Though instruments transferring possession of realty were designated as a lease contract and an option to purchase if the real transaction was a sale of property and certain instalments under the contract denominated as rents really represented

In re Aurora Gaslight, etc., Co.—64 Ind. App. 690.

a balance of purchase money, the character of the transaction cannot be changed by any nomenclature, form or subterfuge employed by the parties, whether innocently or with design to have the transaction appear to be something other than what it in fact was. p. 697.

3. LANDLORD AND TENANT.—*Lease.*—*Effect.*—A lease of real estate ordinarily is a contract by which the owner divests himself of the possession and use of his property, for a valuable consideration, for a definite term, at the end of which he has the absolute right to re-enter, control and use the property. p. 698.

4. VENDOR AND PURCHASER.—*Lease.*—*Option.*—*Construction.*— Where a gas company and another corporation executed an instrument in the form of, and designated as, a lease for a term of years providing that the lessee should pay in instalments, as rental, specified amounts, the aggregate of which during the term was equal to the value of the demised property, that the payments should bear interest, that the lessee was to have possession and entire control of the property and was obligated to keep it in repair, pay all taxes, etc., and that at the end of the term the lessor should convey the plant to the lessee if all payments had been made, the only right of re-entry being in case of default in payments, and at the same time the parties executed another instrument, in the form of an option to purchase the property, containing similar stipulations, as to payment, conveyance, and re-entry only after default, both instruments containing a provision that each was to be considered as a part of the other and should be construed together, the transaction was neither a lease nor a lease with an option to purchase, but was in the nature of a consummated sale with the legal title reserved to the vendor as security for the payment of the purchase price. pp. 698, 699, 700.

5. VENDOR AND PURCHASER.—*Option.*—An option is not an actual or existing contract for the sale of property, but is a proposition by one party, for a consideration, which must be accepted within the time specified in the precise terms named before it becomes a binding contract. p. 699.

6. VENDOR AND PURCHASER.—*Contract of Sale.*—In a contract of sale the offer and acceptance are concurrent, and the instrument shows that the minds of the seller and purchaser have met and fixes definitely the relative rights, duties and obligations of the parties at the time of the execution. p. 699.

7. VENDOR AND PURCHASER.—*Contract of Sale.*—*Equitable and Legal Title.*—A purchaser may acquire the equitable title to property and contract to acquire the legal title upon the per-

In re Aurora Gaslight, etc., Co.—64 Ind. App. 690.

formance of conditions subsequent to the consummated transaction of the sale.  p. 700.

8.  MORTGAGE.—*Absolute Deed.*—*When Held to be a Mortgage.*— A deed absolute on its face may be shown to be a mortgage, and if the transaction under consideration evidences a security for a debt, the instruments, regardless of form, will be held to have the legal effect of a mortgage.  p. 701.

9.  TAXATION.—*Assessment of Personal Property.*—*Money Due on Contract.*—*Statutes.*—Under §1356 Burns 1914, §1285 R. S. 1881, providing that the phrase "personal property" includes goods, chattels, evidence of debt and things in action, and §10199 Burns 1914, Acts 1899 p. 491, requiring every person to list for taxation all notes, mortgages, accounts, demands, claims and other indebtedness owing. him, and §10142 Burns 1914, Acts 1891 p. 199, providing that all property within the jurisdiction of the state, not expressly exempted, shall be subject to taxation, money due a gas company under a contract conveying the equitable title to its property and containing an agreement for the conveyance of the legal title on completion of the stipulated payments is personal property which is assessable for taxation.  p. 702.

From Dearborn Circuit Court; *Warren N. Hauck,* Judge.

Proceedings in the matter of the assessment of the Aurora Gaslight, Coal and Coke Company.  From a judgment of the circuit court adjudging the company liable for certain taxes, the company appeals.  *Affirmed.*

*McMullen & McMullen* and *Addison C. Harris,* for appellant.

*Givan & Givan,* for appellee.

FELT, J.—On July 22, 1912, the auditor of Dearborn county, Indiana, placed on the tax duplicate of that county assessments of omitted personal property of the Aurora Gaslight, Coke and Coal Company as follows:

For the year 1908, $10,500;
For the year 1909, $9,800;
For the year 1910, $8,400;

From the assessments the company appealed to the Dearborn Circuit Court, where upon trial the court found and duly adjudged that said company was liable for taxes on amounts as follows:

For the year 1908, $11,200;
For the year 1909, $10,500;
For the year 1910, $9,800.

The property so assessed is the amount alleged to be due the gas company in each of the respective years aforesaid, from the Indiana Public Service Company, as a part of the purchase money for the sale of its plant and property to that company. The only error assigned is the overruling of appellant's motion for a new trial. The grounds of the motion for a new trial are that the decision of the court is not sustained by sufficient evidence; that the decision is contrary to law.

The facts are not controverted and the correctness of the decision and judgment of the lower court depends upon the meaning and legal effect of the instruments executed by appellant and the service company. On April 27, 1907, appellant executed to the service company a written instrument denominated a lease, the substance of which is as follows: For and in consideration of the covenants and agreements herein contained and payment of $21,000, and other payments and considerations,· the first party, the gas company, hereby demises, lets and leases to the second party, the following real estate and personal property (here follows description of certain real estate in Aurora, Indiana), "together with all the buildings, structures, fixtures, machinery, boilers, engines, reservoirs, tanks, wells, benches, retorts, purifiers, gas mains, conduits, connections, scales and meters, connected with or appertaining to the gas plant of the first party in the city of

Aurora  *  *  *  to have and to hold for the term of nine (9) years from the first day of May, 1907, or sooner determination of this lease, yielding and paying therefor the consideration and rent following to wit:" $5,000 cash May 1, 1907; $1,000 cash May 1, 1908; $1,000 cash May 1, 1909; $2,000 on May 1, of each of the years, viz., 1910, 1911, 1912, 1913, 1915, and 1916, and five per cent. per annum "on all of the unpaid part of said consideration and rent" payable semiannually in equal instalments on the first day of May and November of each year. The second party covenants as follows: 1. To pay all taxes, charges or assessments at any time levied upon or charged against said property, provided the first party shall pay all such charges; taxes and assessments due and payable in 1907. 2. To keep the plant, system and property in as good condition and repair as it was at the time of the transaction. Second party is given the right to make such alterations, changes and improvements as it may deem beneficial, provided the value of the property shall not be lessened thereby. Also granted the privilege of paying "all or any part of the money payments herein provided for in advance." It is further agreed and understood "that a certain agreement of even date herewith relating to the hereby demised property and premises is hereby made a part of this lease, and that the two instruments shall be construed and considered together." Upon full payment of the amounts stipulated herein and performance of all covenants to be performed by the second party, the first party will by good and sufficient assignment and deed convey to the second party the aforesaid real estate, gas plant and appurtenances thereunto belonging. It is further agreed that if the payments aforesaid, or any part thereof, shall remain due and unpaid for ninety days, or if any taxes, charges, or assessments against

said property shall become due and delinquent for ninety days, or if default is made in any of the covenants herein contained or in the aforesaid agreement of even date herewith, then this lease shall become null and void and it shall be lawful for the first party to re-enter the said premises and remove all persons therefrom and repossess said premises, the second party waiving all notice to quit. The second party covenants to pay the first party the amounts above specified and first party covenants that on payment of the money and performance of the aforesaid agreements second party may hold and enjoy said premises for the time and term aforesaid.

On the same date the same parties executed another instrument, which appellant denominates an option, in substance as follows: In consideration of the mutual agreements, covenants and conditions herein contained, and in further consideration of $21,000, and a further sum equal to the reasonable price of all personal property to be scheduled and prices fixed to the mutual satisfaction of the parties hereto, the first party hereby covenants and agrees to sell, transfer, assign, set over and convey to second party the identical real estate, property and appurtenances described in the alleged lease in this writing.

"And in consideration aforesaid, the second party covenants and agrees to pay and render to said first party, the consideration abovesaid, as follows:" Here follows stipulation of amounts, dates of payment, rate of interest and other conditions identical with those in the alleged lease, including provisions relating to payment of taxes, charges and assessments, insurance, prepayment of the consideration, and the making of alterations, repairs or improvements. It is also provided that the "certain lease of even date herewith" is hereby made "a part of this agreement as fully and

completely as it would or could be if copied herein" and said two instruments shall be considered and construed together as parts of the same transaction. Provided that the title to said property shall be and continue in first party until such time as the second party shall have fulfilled all its part of the agreement. Then follow stipulations for assignment and conveyance of property same as in "the lease" and the provisions as to default in payments for ninety days to the effect that on such default "first party at its option shall have the power and right to declare and make this agreement void and of no continuing force or effect and upon such declaration * * * second party shall forfeit and release by way of liquidated damages, all right, title, claim or demand on or to said premises or any part thereof, and to any and all money theretofore paid by the second party to the first party."

At the trial it was agreed that the service company entered into possession of the property in pursuance of said writings and has since continued in such possession; that all payments due have been made in accordance with the terms of the writings.

Appellant contends that the instruments and the transactions between the parties thereto do not show a sale of the property to the service company and a debt due it from such purchaser for a balance of purchase money which is liable to assessment for taxation. It further contends that the writings show that the service company only held an option for the purchase of the property described therein; that it had possession and control thereof by virtue of the lease and that the stipulated money obligations represent rent and not a balance of purchase money.

The parties have agreed that the two instruments shall be construed together and the rules of construction, independent of such agreement, would necessitate

such consideration.  Considering the writings in their entirety and the character of the transaction we must seek to find the intention of the parties.  The form and names of the instruments are not of controlling effect for the law looks through form to substance and will give effect to the real and dominant intention of the parties when definitely ascertained.  *Beardsley* v. *Beardsley* (1890), 138 U. S. 262, 11 Sup. Ct. 318, 34 L. Ed. 928; *Mendenhall* v. *First New Church, etc.* (1911), 177 Ind. 336, 342, 98 N. E. 57; *Herryford* v. *Davis* (1880), 102 U. S. 235, 26 L. Ed. 160; *White* v. *Redenbaugh* (1907), 41 Ind. App. 580, 583, 82 N. E. 110.

In the case at bar we are only concerned with the question of intention as it bears upon the right to subject the money obligations to taxation.  If the real transaction was a sale of property and such amounts in truth and in fact represented a balance of purchase money, the character of the transaction cannot be changed by any nomenclature, form or subterfuge employed by the parties, whether innocently or with design, to have the transaction appear to be something other than what it in fact was.  *Mendenhall* v. *First New Church, etc., supra; Hanlon* v. *Doherty* (1887), 109 Ind. 37, 9 N. E. 782; *Cox* v. *Ratcliffe* (1886), 105 Ind. 374, 378, 5 N. E. 5.

By the terms of the instruments the purchaser was given full possession and absolute control of the property with no rights reserved to the seller except those which were dependent upon the possible default of the purchaser, and none had occurred when the property was listed for taxation.  In the absence of such default, appellant could not assert any claim against the property or right to the use, possession or control of the same.

A lease of real estate ordinarily is a contract by

which the owner divests himself of the possession and use of his property, for a valuable consideration, 3. for a definite term, at the end of which he has the absolute right to re-enter, control and use such property. *Spiro* v. *Robertson* (1914), 57 Ind. App. 229, 234, 106 N. E. 726; *Mendenhall* v. *First New Church, etc., supra.*

The writings in the case at bar give appellant no such absolute right of re-entry and there is no principle of law which warrants us in presuming a default 4. that may bring such right into existence. If we were to indulge any presumption, which we are not called upon to do, the presumption of law is that men perform their obligations and not that they repudiate them or suffer default. The cash payment of $5,000 and the several deferred payments exactly equal the selling price of the property and the deferred payments bear interest from date payable semiannually. On its face it is inconsistent with a lease that the rentals should bear interest and it is at least unusual that the rental for nine years should equal the value of the property. The absolute right to possess, control and improve the property, the obligation of the service company to pay taxes and assessments and to insure the property for the benefit of each party according to their respective interests, are all facts and conditions consistent with the theory of a sale and very forcibly indicate that the transaction was in fact a sale and not a lease with an option to purchase. Furthermore, the instruments and the transaction show a consummated sale. The holding of the legal title until the payments were made in full was a method of securing the purchase money and simplifying the procedure in case of default in payment, but is utterly inconsistent with the idea of an option to purchase.

An option is not an actual or existing contract for

the sale of property. It is a proposition by one party, for a consideration which must be accepted within the specified time in the precise terms named before it becomes a binding contract. If not so accepted, it does not become a contract, and the option is at an end. 6 Words and Phrases 5000; *Hopwood* v. *McCausland* (1903), 120 Iowa 218, 94 N. W. 469, 470; *Sizer* v. *Clark* (1903), 116 Wis. 534, 93 N. W. 539, 541; *McMillan* v. *Philadelphia Co.* (1893), 159 Pa. 142, 28 Atl. 220; 39 Cyc 1232 *et seq.* The writings cannot be reasonably construed to mean an option for the purchase of the property therein described. The only option feature of the agreement is the right of appellant upon default of the service company to elect to declare a forfeiture of the contract of sale, and to re-enter and take control of the property. But such election by the terms of the agreement, is a right that appellant may or may not assert, and upon such default it would have the right to stand by the sale and enforce collection of the balance of the purchase money, instead of exercising its option to take the property in satisfaction of such debt.

In a contract of sale an offer and acceptance are concurrent. The instrument shows that the minds of the seller and purchaser have met and fixes definitely the relative rights, duties and obligations of the parties at the time of execution. *McMillan* v. *Philadelphia Co., supra; Micks* v. *Stevenson* (1899), 22 Ind. App. 475, 478, 51 N. E. 492. The writings in the case at bar when considered in the light of the nature of the transaction and the relation of the parties show clearly that there was an executed sale of the property; that the purchaser entered into full possession and control of the same and immediately became the owner thereof holding the equitable title, with absolute assurance of obtaining the legal title upon

performance of conditions subequent to the sale; that the owner retained the legal title to the property as security for the deferred payments and bound itself absolutely to convey the legal title to such purchaser upon full payment of the purchase money and compliance with the terms of the contract of sale. The amount of the several deferred payments, the date of maturity, the rate of interest, and the security are all definitely stipulated and the instruments in legal effect, though not in form, constitute a mortgage securing deferred instalments of purchase money. The law recognizes equitable titles. A purchaser may acquire the equitable title to property and contract to acquire the legal title upon the performance of conditions subsequent to the consummated transaction of the sale. *Micks* v. *Stevenson, supra; Beardsley* v. *Beardsley, supra.*

In *Beardsley* v. *Beardsley, supra,* Justice Brewer quoted approvingly the following: " 'Where the buyer is by the contract bound to do anything as a consideration, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer' ". Continuing, the opinion states: "Tested by this rule, this instrument must be adjudged not a contract to sell, but a sale with reservation of security. These words imply nothing executory, but something executed. It is not that the vendor will sell, but has sold. Not that the title remains in the vendor, yet to be transferred, but that it already has been transferred. The ownership, equitable if not legal is in the vendee. It is not that the stock belongs to the vendee, upon payment, * * * but that it is now his, subject to a lien. Its meaning is, therefore, that of a sale, with retention of the legal

title as security for purchase money. It is an equitable mortgage, and the rights created and assumed by it are like those created and assumed when the owner of real estate conveys by deed to a purchaser, and takes back a mortgage as security for unpaid purchase money."

8. Furthermore, it has been held many times by both our courts of last resort that a deed absolute on its face may be shown to be a mortgage; that each case involving questions of the kind here under consideration must be determined according to the peculiar facts and circumstances of the particular case; that if the transaction, taken as a whole, evidences a security for a debt, the instruments, regardless of form, will be held to have the legal effect of a mortgage securing such debt. *Voss* v. *Eller* (1887), 109 Ind. 260, 263, 10 N. E. 74; *Wolfe* v. *McMillan* (1889), 117 Ind. 587, 590, 20 N. E. 509; *Calahan* v. *Dunker* (1912), 51 Ind. App. 436, 444, 99 N. E. 1021; *Voris* v. *Ferrell* (1914), 57 Ind. App. 1, 10, 103 N. E. 122; *Brown* v. *Follette* (1900), 155 Ind. 316, 321, 58 N. E. 197; *Kitts* v. *Willson* (1892), 130 Ind. 492, 499, 29 N. E. 401; *White* v. *Redenbaugh, supra; Greenwood Bldg., etc., Assn.* v. *Stanton* (1901), 28 Ind. App. 548, 554, 63 N. E. 574; *Herryford* v. *Davis, supra;* 5 Elliott, Contracts §§4647-4654. In *Wolfe* v. *McMillan, supra,* our Supreme Court said: "Where, therefore, at the time of such transaction, there is an existing debt, the true inquiry is, was such debt, by the transaction, in good faith extinguished? If it was, there can be no mortgage, for the reason that there is no debt to secure. If it was not extinguished, the transaction, no matter what its form, will resolve itself into that of a mortgage security." The facts of this case invoke the principles already announced. Here the appellant is bound to convey the legal title of the property, sold and already transferred, when the debt is fully paid.

The existence of the debt is clearly recognized and was an enforceable obligation at the election of appellant by the usual course of a suit upon the written obligation to pay; or by proceeding to retake the property in pursuance of the terms of the agreement.

9.

By §1356 Burns 1914, §1285 R. S. 1881, the phrase "personal property" included goods, chattels, evidence of debt and things in action. By §10199 Burns 1914, Acts 1899 p. 491, every person is required to list for taxation all notes, mortgages, accounts, demands, claims and other indebtedness owing to him. Section 10142 Burns 1914, Acts 1891 p. 199, provides that: "All property within the jurisdiction of this state, not expressly exempted, shall be subject to taxation."

In *Board, etc.* v. *Lattas Creek Coal Co.* (1912), 179 Ind. 212, 217, 218, 100 N. E. 561, our Supreme Court said: "We think that our legislation contemplates that no one shall be required to pay taxes on property that he does not own, and that no one shall escape taxation on property he does own." Appellant owned the obligations listed for taxation and had a most effective means of enforcing collection by either of the methods already indicated. The cases cited by appellant to the effect that a tax cannot be laid on specific property unless the same has been made taxable by statute, have no application to the case at bar, for, as already pointed out, the statute clearly contemplates the assessment of such obligations as those listed for taxation against appellant.

The decision of the trial court is supported by sufficient evidence and is fully warranted by the law. Judgment affirmed.

NOTE.—Reported in 113 N. E. 1012. Opinion on petition to transfer, 186 Ind. 690.