## HANEY *v.* ESTATE OF DENNY.

[No. 19,769. Opinion on Motion to dismiss filed June 13, 1962.
Opinion on merits, filed November 13, 1963.]

*Sidney A. Horn, Paul E. Blackwell, Rochford, Black-well & Rochford,* of counsel, all of Indianapolis, and *Eugene B. Burns,* of Lebanon, for appellant.

*Scifres & Hollingsworth, Ben M. Scifres* and *Roscoe Hollingsworth,* of Lebanon, for appellee.

## On Motion to Dismiss

Kelley, C. J.—The transcript and Assignment of Errors in this appeal were filed and submitted on December 28, 1961. Said Assignment of Errors named as appellee "Estate of Noble F. Denny, Deceased." No other appellee was named either in the title or the body of the Assignment of Errors.

Pursuant to extension of time duly granted therefor, appellant's brief was filed on February 28, 1962. On March 13, 1962 the designated appellee filed petition for extension of time to file brief and the same was granted to and including May 9, 1962.

On March 29, 1962 Gladys M. Denny, Executrix of the Estate of Noble F. Denny, deceased, filed a petition to withdraw said petition for extension of time to file brief and for permission to file motion to dismiss the appeal. Said petition was denied on April 6, 1962. Thereafter, on April 17, 1962 a brief, entitled "Appellee's Brief" was filed and a motion to dismiss the appeal was filed by said Gladys M. Denny, Executrix, etc.

The motion to dismiss the appeal is predicated upon the ground that all times since the filing of the original complaint in the Boone Circuit Court and down to the present time, said Gladys M. Denny has been, and is, the duly appointed qualified and acting executrix of the Estate of Noble F. Denny, deceased, and that she is not named or made a party appellee in the Assignment of Errors.

The record reflects that appellant's claims in the estate proceedings of said decedent were filed against: "Gladys Denny, Executrix," and that the judgment, after trial and finding by the court, without jury, was as follows:

" . . . the court now finds for the *defendant executrix* and against the claimant on said claims . . . . It is therefore, considered, ordered and adjudged by the court that the claimant take nothing, by his claims and that the *defendant executrix* have and recover her costs herein." (Emphasis supplied).

Thus, it is apparent that the judgment was rendered for and in favor of the executrix, Gladys Denny, and that, under Supreme Court Rule 2-6, she is the party to the judgment "whose interests are adverse" to the interests of the appellant. Her interests and duties, as executrix of said estate, are vitally and intimately affected by said judgment. If the judgment had been in favor of appellant, said Gladys Denny, as such executrix, would have been the only party capable of taking and perfecting an appeal therefrom. She, as such executrix, under said Rule 2-6, should have been named as a party appellee in the assignment of errors, which is considered as appellant's complaint in this court.

The said judgment was rendered on June 9, 1961 and on July 7, 1961, appellant filed his motion for a new trial. Said motion was overruled on October 3, 1961. Appellant's time for perfecting his appeal expired on January 2, 1962.

On April 19, 1962 appellant filed herein a motion to amend the assignment of errors "by inserting in the title thereof, as an appellee, Gladys Mae Denny, Executrix of the Estate of Noble Frank Denny, Deceased." In support of said motion, appellant cites "*Jasper & Chicago Motor Express, Inc.* v. *Ziffrin Truck Lines, Inc.* (May, 1961), 175 N. E. 2d 20," and says that the Supreme Court therein, in effect, held that the failure to name a party in the assignment of errors is not

jurisdictional and that the appellant is entitled to amend his assignment of errors.

The Supreme Court, in said Ziffrin case, by a Per Curiam opinion, disapproved our statement in the same case (see 172 N. E. 2d 586), to the effect that the failure to name a party in the assignment of errors is jurisdictional. It may be fairly said, we think, that by its Per Curiam opinion in said Ziffrin case (as reported in said 175 N. E. 2d 20) the Supreme Court evinced its intention of departing from the rule generally adhered to by both the Supreme Court and our court before and after the amendment of Rule 2-6 in 1943, to the effect that the failure to name parties, either as appellants or appellees, is fatal to the appeal on jurisdictional grounds, except where modified by statute. Generally, see the following, which constitute only a few among many: *Keiser* v. *Howard* (1927), 199 Ind. 137, 155 N. E. 707; *Hayes et al.* v. *Adams et al.* (1943), 221 Ind. 480, 49 N. E. 2d 345; *Nordyke & Marmon Co.* v. *Fitzpatrick* (1904), 162 Ind. 663, 71 N. E. 46; *Voss* v. *Balz* (1932), 203 Ind. 221, 179 N. E. 552; *Second National Bank of Robinson, Ill.* v. *Scudder* (1937), 212 Ind. 283, 6 N. E. 2d 955; *Ex Parte Fennig et al., Ex Parte Whipple* (1939), 216 Ind. 298, 23 N. E. 2d 678; *Hildebrand* v. *Strickland* (1935), 100 Ind. App. 443, 194 N. E. 190; *In re Wiles, In re Gibbs* (1935), 208 Ind. 271, 195 N. E. 572; *Smith* v. *Holtz* (1901), 26 Ind. App. 692, 60 N. E. 728; *Jenkins* v. *Steele* (1913), 55 Ind. App. 11, 102 N. E. 139; *Estate of Joseph Peden, Deceased* v. *Noland* (1873), 45 Ind. 354; *The Estate of Thomas* v. *Service* (1883), 90 Ind. 128; *Dallam* v. *Stockwell's Estate* (1904), 33 Ind. App. 620, 71 N. E. 911; *Indiana Construction Material Co.* v. *Gelopulos* (1961), 131 Ind. App. 494; *Cook* v. *Albrecht* (1957), 127 Ind. App. 457, 143 N. E. 2d 121; *Baugher*

*et al.* v. *Hall, Receiver, etc.* (1958), 238 Ind. 170, 147 N. E. 2d 591; *Otolski* v. *Estate of Nowicki* (1959), 129 Ind. App. 492, 158 N. E. 2d 296; *Wilson* v. *Kings Estate* (1961), 131 Ind. App. 412, 171 N. E. 2d 485; *Lafayette Chapter, etc.* v. *City of Lafayette et al.* (1959), 129 Ind. App. 425, 157 N. E. 2d 287; *Russell* v. *Moore* (1960), 130 Ind. App. 351, 164 N. E. 2d 670; *Allen et al.* v. *Review Board of Ind. Employ. Sec. Div.* (1959), 130 Ind. App. 165, 162 N. E. 2d 689; *McArdle* v. *Board of Zoning Appeals* (1960), 131 Ind. App. 5, 167 N. E. 2d 608.

Said Rule 2-6 provides, in part:

"Failure *properly to name* parties will not be treated as jurisdictional." (Our emphasis).

In *Allmon et al.* v. *Review Board, etc. et al.* (1953), 124 Ind. App. 212, 215, 116 N. E. 2d 115, we held that said quoted part of said rule referred to "misspelling of names, initials or where incorrect given names are listed or other similar means of identification. It does not refer to where there is a total lack or failure on the part of those taking an appeal to name in the assignment of errors the proper party appellants."

In 1958 our Supreme Court, then composed of the same membership as at present, with one exception, in *Baugher et al.* v. *Hall, Receiver, etc., supra,* a Per Curiam opinion, quoted from and impliedly approved the holding in said Allmon case, *supra,* and noted that "considerable confusion has resulted in the interpretation and effect of failure to name parties on appeal" and that "the situation should now be clarified." The clarification made thereby was that said Rule 2-6 "does not dispense with the necessity of naming in the assignment of errors 'all parties to the judgment seeking

relief by the appeal' and 'all parties to the judgment whose interests are adverse to the interests of the appellants.' " The appeal was dismissed for the failure of appellant to name the Receiver in the assignment of errors, there being "no amendment sought or made *within time* to the assignment of errors." (Emphasis supplied).

Said Baugher case, *supra,* further held that where appellant fails to name, as appellees, all parties to the judgment who have an adverse interest to appellant, "this court does not acquire jurisdiction of the appeal. . . . This is a requirement which, of course, *cannot be waived nor modified by this court.*" (Our emphasis).

However, by the Per Curiam opinion in *Jasper & Chicago Motor Express, Inc.* v. *Ziffrin Truck Lines* (175 N. E. 2d 20), *supra,* the Supreme Court did, in fact, modify the rule adhered to in the *Baugher* v. *Hall* case, *supra,* and, in effect, held that the failure to name a party in the assignment of errors is not jurisdictional. The court proceeded further to declare a denial of transfer because "after appellant's attention was called to the defect in the parties named in the assignment of errors, *no application or attempt was made to amend,*" as provided in said Rule 2-6. (Emphasis supplied).

The Supreme Court, in said Ziffrin case last referred to, made no observation as to when or within what time the application or petition to amend the assignment of errors with respect to parties should be made or tendered. Should such application to amend be made prior to the expiration of the time provided or allowed for perfecting the appeal? Can it be made at any time before the opinion in the case is handed down? Can it be made as a part of the petition for a rehearing?

Under said Rule 2-6 does the appellate tribunal possess a discretion as to the time within which the application to amend must be made? If so, can such discretion be varied with respect to each case? By what rule are counsel for the parties to be guided? Shall there exist one rule as to time in the Supreme Court and a different time rule in the Appellate Court? These and other questions remain undetermined.

There is yet to be considered, also, the matter of the influence, if any, of the provisions of Rule 2-3 upon the question at hand. This rule states:

> "Distinctions between term time and vacation appeals are abolished. All parties to the record in the trial court shall be parties on appeal without further notice."

It seems evident that the purpose of the above quoted portion of said Rule 2-3, at the time it was adopted, was to obviate the previous requirement of notices to parties of the intended appeal, since the distinction between term time and vacation appeals was abolished. However, there has appeared some judicial thought that all parties to the record in the trial court are, by virtue of said rule, parties on appeal whether or not they are named in the assignment of errors.

It seems to us that it is not asking too much of an appellant to require that he name in his assignment of errors the necessary parties to the judgment appealed from, as provided in said Rule 2-6. If the parties are numerous and the suit is brought or defended as a class action, the ruling of the Supreme Court in *King et al.* v. *City of Bloomington* (1959), 239 Ind. 548, 159 N. E. 2d 563, should be followed. If by inadvertence, mistake, clerical error, or other excusable cause, properly made evident by appellant's veri-

fied petition, it appears that the name of a necessary party does not appear in the assignment of errors, and the appellant has proceeded promptly after learning or becoming cognizant of such omission, we think the court of appeal has the inherent power to authorize the appellant, upon due notice given by him to the opposing parties or their attorneys of record, to amend the assignment of errors by naming the omitted party in such assignment of errors. Since the Supreme Court has determined, see the Ziffrin case (175 N. E. 2d 20), *supra*, that the failure to name a party in the assignment of errors is not jurisdictional, it would seem logically to follow that the time for the filing of an application to amend the assignment of errors, in respect to the parties, should be determined not by the expiration of the time allowed for the perfection of the appeal but by the circumstances of the particular case and the good faith of and promptness of action by the appellant as exhibited by the allegations of his verified petition or application for the right to amend.

In the present case, the named appellee, by counsel, as stated above, filed a petition for extension of time in which to file brief and stated therein that such brief "when filed, will be on the merits", and that "this court has jurisdiction of this appeal". That extension of time was granted by us and said appellee's brief has been filed. Under the prevailing authorities, the appellee thereby waived his right to petition for a dismissal of this appeal upon the ground of a defect in parties. *McClure* v. *Federal Land Bank of Louisville* (1938), 213 Ind. 644, 14 N. E. 2d 101, 14 N. E. 2d 537; *Industrial Machinery Co. Inc.* v. *Roberts* (1947), 225 Ind. 1, 5, 72 N E. 2d 223. Under this circumstance we would be fully justified by the authorities in denying the motion to dismiss. However, we feel

that the question is of such moment that a definite position as to the right to amend the assignment of errors by adding omitted parties to the same should be now taken.

Appellant's motion to amend the assignment of errors was filed within two (2) days after appellee's aforesaid petition to dismiss. While we do not consider that appellant's verified motion is as complete and sufficient as it should be, yet, it clearly appears therefrom that the omission to name "Gladys Mae Denny, Executrix of the Estate of Noble Frank Denny, Deceased," as a party in the assignment of errors, occurred by reason of the alleged "inadvertence and excusable neglect" of the appellant.

It is the disposition of our court to determine cases upon their merits where it is possible so to do under the rules. The granting of appellant's motion will cause harm to no one.

The named appellee's motion to dismiss this appeal is denied. Appellant's motion to amend his assignment of errors, as prayed for is granted, such amendment to be made within the next ensuing ten (10) days.

## OPINION ON THE MERITS

MOTE, C. J.—Appellant assigns as error the overruling of his motion for a new trial and contends that the decision of the trial court is (1) not sustained by sufficient evidence, and (2) is contrary to law, which he presents and argues collectively.

In the interest of brevity, we have adopted the concise statement of facts in the case as set forth in appellee's brief, as follows:

"1. Noble Frank Denny and Gladys May Denny owned certain real estate in Lebanon, Indiana, on

which there was a restaurant known as 'Beacon Inn' and a service station leased to Sinclair Refining Company. The Dennys operated the restaurant and owned the equipment.

"2. On April 16, 1955, the Dennys leased said real estate to the appellant, Troy H. Haney, and assigned to Haney all their right, title and interest in the Sinclair lease for the duration of the Haney lease.

"3. By the terms of the lease, Haney paid the defendants a rental of $10,000.00 per year, and was given an option to buy said property for $85,000.00, said option being non-assignable and it could not be exercised before the year 1960, and further provided that in case of the sale of said property the Dennys would pay to Haney the sum of $4400.00 which Haney had expended as a part of the cost in acquiring said lease.

"4. That the State of Indiana, under eminent domain proceedings, condemned said real estate on January 9, 1958, and took possession on May 1, 1958.

"5. Appraisers were appointed by the Court to fix the damages of all parties concerned, to-wit, the Dennys, as the owners in fee simple; Sinclair Refining Company, lessee; and Haney, the appellant, as a lessee. That said appraisers duly appraised the interests involved and fixed the damages for the appellant, Haney, in the amount of $39,642.65. The appraisers fixed the fair market value of the leasehold interest of the appellant at $4400.00; his interest in improvements, which he had made on the real estate in the amount of $5,293.36, and the fair market value of the furniture, fixtures and equipment owned by the appellant, or the damage to be sustained by him as a result of the taking, in the amount of $8,754.65, and other damages for Haney, in the amount of $21,194.64.

"6. Exceptions were filed by all the parties and the condemnation case was venued to Montgomery County.

"7. Noble Frank Denny died December 13, 1958, and, subsequent thereto, the appellant filed Claims against the Denny Estate.

"8. That said condemnation case, State of Indiana v. Gladys May Denny, Executrix of the Estate of Noble Frank Denny, deceased et al., No. 32172, went to trial in the Montgomery Circuit Court, and, after several days of hearing, the State of Indiana withdrew its objections.

"9. Since all the parties involved had drawn down the money paid into the Clerk's Office of the Boone Circuit Court by the State of Indiana, Judge Sommer, of Montgomery Circuit Court, held that the State had a right to withdraw its objections, and rendered judgment in favor of all of the parties involved in the amounts fixed by the Court's appraisers. The appellant appealed from said judgment and said appeal is now pending in the Supreme Court of Indiana under Cause No. 30070. The claims the appellant filed against the estate of Noble Frank Denny were consolidated and tried under Cause No. 21472 in the Boone Circuit Court and judgment for the appellee was entered June 9, 1961, from which judgment this appeal is taken."

The lease of real estate with option to purchase here involved, omitting the detailed description and other formal parts, is as follows:

"Exhibit A

LEASE

THIS AGREEMENT, made and entered into in duplicate this 16th day of April, A.D. 1955, by and between Noble F. Denny and Gladys M. Denny, his wife, of 529 Esplanande Street, Lebanon, Indiana, Parties of the First Part, hereinafter referred to as 'Lessor,' and Troy Haney of 5102 North Pennsylvania Street, Indianapolis, Indiana, Party of the Second Part, hereinafter referred to as 'Lessee.'

WITNESSETH:

1. Lessor, for and in consideration of the rents, covenants and agreements hereinafter mentioned,

reserved and conditioned on the part of Lessee to be maintained, paid, kept and performed, has rented and leased and by these presents does hereby rent and lease unto Lessee, their successors and assigns, the following described premises, situate two-tenths (2/10) miles South of the City of Lebanon on State Road #39, Highway, State of Indiana; said premises being further described as:
. . .

To Have and to Hold the above rented and leased premises with the buildings, improvements and fixtures, and such furniture, restaurant equipment, pumps, tanks, air compressors, appliances, pipe lines, unloading racks and unloading facilities as may now or hereafter be located or placed thereon by Lessor, including without restricting thereto the equipment list attached hereto and marked Exhibit A, and all rights, privileges and appurtenances thereunto belonging, together with any and all permits, whether village, city, county or State, unto Lessee, their successors and assigns, for a term of nine and one-half (9-1/2) years from the 16th day of April, A.D. 1955. Lessor hereby covenants and agrees to place Lessee in possession of the demised premises and improvements at the beginning of and for said term, Lessor hereby gives and grants to Lessee the exclusive option and privilege of extending this lease from year to year for five successive yearly periods in addition to the nine and one-half year term above specified. Lessee may exercise its option at the end of the term above specified and at the end of each yearly period by remaining in possession and by paying the rent as herein provided. Lessee shall have the privilege of terminating this lease at the end of the nine and one-half year term as above specified.

2. Beginning with April 16, 1955 and at the beginning of each six month period, thereafter, during the continuance of this lease, Lessee agrees to pay to Lessor the sum of $5,000.00 in advance for said respective six months period during the term of this lease. All rentals shall be payable to Noble F. Denny and Gladys M. Denny, and may be paid by check mailed to Lessor at Lebanon, Indiana, or to such person or persons as may be designated

in writing by Lessor to receive the same receipt of above payment is hereby acknowledged.

3. If at any time during the term hereof Lessor shall be indebted to Lessee on any account whatsoever, Lessee shall have the right to apply any accrued rental upon said unpaid indebtedness of Lessor, and Lessor agrees that the amount so applied shall constitute rental payment hereunder.

4. Lessor covenants and agrees to and with Lessee that the rents being paid in the manner and at the time prescribed, and the covenants and conditions and warranties herein being all and singular kept, fulfilled and performed, Lessee shall lawfully and peaceably have, hold, possess, use and occupy the premises and property hereby leased during the term hereby granted, or any extension thereof, without any hindrance, disturbance or molestation from Lessor; and Lessee hereby warrants and defends to Lessee against the lawful claims of all persons whomsoever the premises and property hereby granted. Lessor further covenants and agrees that, without Lessee's consent, it will not use or permit to be used for the storage, sale, distribution, or advertisement of petroleum products any premises which may be or become owned or controlled by Lessor adjacent to the premises covered hereby.

5. During the term of this lease, Lessor covenants and agrees to pay all general special real estate property taxes but the same shall be limited to real estate property taxes only, Lessee shall pay all other taxes on stock owned by Lessee and on all equipment and personal property owned by Lessor and covered by this lease as well as all utilities charges, special assessments of any kind or character against said real estate or the property covered by this lease and all other charges, assessments or taxes arising out of the operation of business as said location by Lessee.

6. Lessee agrees at his own expense to maintain said premises and the improvements, equipment and personal property thereon hereby leased, including driveways, and approaches in as good condition as the same are now in at the time of

the beginning of this lease. Lessee further agrees to replace and repair any of the demised premises or personal property of Lessor if, as and when such repairs and replacement is needed. With respect to personal property and equipment of Lessor when the same shall be replaced, such replacement shall be and become the property of Lessor subject to the terms of this lease as if the same has been property originally leased herein.

In the event of destruction of or damage to the demised premises or personal property caused by fire or action of the elements, if Lessor fails to rebuild or repair within 60 days after such destruction or damage, Lessee shall have the option of terminating this lease by notice to Lessor and upon such termination, Lessee shall be relieved from all obligations hereunder thereafter.

7. Lessee shall have the right to make proper connections with any and all water, gas and sewer lines and pipes on the demised premises, and may continue to use and service thereof during the term of this lease.

8. In the event Lessee shall be in default in the payment of rentals hereunder, or otherwise, and shall remain in default for a period of thirty (30) days after notice in writing from Lessor to it of such default, Lessor shall have the privilege of terminating this lease and declaring the same at an end, and of repossessing itself of the premises, and Lessor shall have the remedies now provided by law for recovery of rent and repossession of premises in the event Lessee shall remain in default.

9. In the event Lessee is unable to obtain all permits and permissions necessary to install, operate and maintain on the leased premises the necessary building and equipment for conducting its business as herein provided, or if at any time hereafter Lessee is prevented by operation of law from using said station and premises for the purposes aforesaid, then and in any of said events Lessee may, at its option, cancel this lease and be relieved of any further liability hereunder.

10. For and in consideration of the promises and agreements on the part of each party herein to be performed, Lessor hereby gives and grants unto Lessee from April 16, 1960 for and so long as this lease or any renewal thereof shall be effective, the sole, exclusive and non-assignable option to purchase the leased premises, including all Lessor's improvements thereon and all equipment and personal property belonging to Lessor and covered by this lease free and clear of any and all liens and encumbrances of any kind or nature whatsoever for the sum of $85,000.00, in cash or by such other method of payment as may be agreed upon between Lessor and Lessee. It is understood and agreed by Lessor that whomsoever purchases said property, the Lessor, shall refund to Lessee the brokerage commission paid to John Weigle & Associates, in the sum of (4,400.00) to Lessee, Troy Haney or his heirs and assigns. Refer to, paragraph #13.

It is further understood and agreed that this entire lease, including all provisions, shall be void and of no force and effect whatever if Harold Berger and Lee Adler of Tippecanoe County, Indiana, shall exercise a certain option which they have affecting said real estate and personal property and if said option shall be exercised on or prior to October 15, 1954, and in the event of the exercise of said Berger and Adler option, Lessor agrees to return to Lessee the initial monthly rental payment herewith paid by Lessee to Lessor.

11. It is further understood and agreed that this lease and all provisions thereof, including the option to purchase is subject and inferior to a certain written agreement of lease with the right of refusal of option to purchase existing between Lessor or either of them and Sinclair Refining Company.

12. It is understood and agreed that upon the execution of this lease and entry into possession by Lessee that the rights of Lessor under said Sinclair Refining Company lease shall be transferred and assigned to Lessee for the duration and subject to the terms of this lease, including among said

rights, the right of Lessor, to be assigned to Lessee, of receiving 1/2 cent rebate on gallonage to be paid by Sinclair Refining Company under said Sinclair lease.

13. It is understood and agreed that upon the execution of this lease, Lessee is paying to John Weigle & Associates of Lafayette, Indiana, a brokerage commission in the sum of $4,400.00 and that the payment of said brokerage commission by Lessor is in full payment of all obligations of all parties hereto, including the execution of this lease and the exercise of Lessee's option.

Lessor warrants and represents that there are no operating debts or obligations of said business other than the bills receivable and bills payable, a list of which is attached hereto, made a part hereof, and marked Exhibit B and it is agreed between the parties hereto that as of April 15, 1955, Lessor shall have and take all bills receivable and that Lessor shall pay all bills due and payable as of April 15, 1955. This agreement shall not obligate Lessor to immediately pay any long term indebtedness or liens on said property during the term of this lease prior to the exercise and execution of Lessee's option to purchase above defined.

14. Lessee agrees to keep and maintain comprehensive public liability insurance on said premises and the operation thereof in a company or companies and amounts satisfactory to Lessor and for the protection of Lessor as well as Lessee.

IN WITNESS WHEREOF, the parties hereto have set their respective hands and seals the date first above written."

Since this appeal must be decided on an interpretation of the above lease and the rights of the parties to this appeal, as advanced by them, we consider that it is not essential to set out the two claims filed by appellant against appellee estate which were disallowed, transferred to the issue docket and tried by the court without intervention of a jury, resulting in a judg-

ment adverse to appellant that he take nothing on his said claims.

In addition to the appraisers' awards in the condemnation proceedings made to appellant, appellee estate and Sinclair Refining Company, lessee of part of the real estate and not involved in this appeal, received the following awards:

"The Dennys were allowed:

| | |
|---|---|
| The fair market value of the fee simple interest | 17969.07 |
| The fair market value of all improvements pertaining to the realty | 55119.14 |
| The fair market value of the furniture, fixtures and equipment | 13276.11 |
| Other damages resulting from the taking | 20000.00 |
| | 106364.32 |

Sinclair Refining Company was allowed:

| | |
|---|---|
| Fair market value of leasehold interest | 6263.00 |
| Fair market value of the furniture, fixtures and equipment | 5603.10 |
| Other damages resulting from the taking | 6263.00 |
| | 18129.10" |

Objections and exceptions were filed by all parties in the condemnation proceedings to the appraisers' awards and then all defendants therein, except appellant, withdrew their said objections. The action went to trial on the objections and exceptions of appellant and the State of Indiana appraisers' awards were upheld by the court and the State of Indiana recovered judgment on condemnation. Appellant herein filed a motion for new trial, which motion was overruled, and the matter is now on appeal to the Supreme Court of Indiana under Cause No. 30070.

Appellant's position in relation to their appeal succinctly seems to be stated in his brief as follows:

"Notwithstanding the statutory remedies available to appellant in the condemnation proceeding as above referred to, . . . the award of damages made to lessors, Noble F. Denny" (now deceased and against whose estate the claims before us were filed) "and Gladys Mae Denny is erroneous in that it provides for the payment to said lessors of certain damages which appellant claims should properly have been a part of the award of damages to him (appellant). . . . "

Whether appellant herein was awarded sufficient damages in the condemnation proceeding amply to reimburse him for the property rights taken from him is not for us to say. Such question necessarily will have to be determined in that proceeding which is on appeal to the Supreme Court. Appellant was a party to the proceeding and he is bound by the outcome thereof as a co-defendant with substantial property rights involved. Appellant had the burden of proving his damages. *Douglas et al.* v. *Indianapolis & Northwestern Traction Company* (1906), 37 Ind. App. 332, 76 N. E. 892.

Appellant contends that certain damages awarded to appellees in the condemnation proceeding should have been awarded to him and to advance his reasoning in this respect he asserts an ownership in the real estate and personal property based on the option to purchase. A lease of real estate with an option to purchase, and particularly where the option has not ripened, as in the case at bar, does not create in the lessee and future optionee an interest in the property upon which recovery may be had after the same has been taken by eminent domain.

29. C. J. S. *Eminent Domain*, §196, p. 1101, contains the following statement:

" . . . The holder of an option to purchase land being condemned has no interest in land which will entitle him to compensation, although there ■ is some authority to the effect that, if such option is exercised after the condemnation, the holder thereof is entitled to claim the damages awarded, less the purchase money payable to the owner."

Appellant seems to make an effort to bring himself within the terms of the latter part of the above quoted statement, but has wholly failed to do so according to the record. Even so, this principle would be unavailing to him under the case of *Kritz* v. *Moon* (1928), 88 Ind. App. 5, 163 N. E. 112, which states:

"The contract giving Edward B. Moon an option did not give him any title to the land, either legal or equitable, and his assignment of his ■ rights under the contract passed no title to his assignee. *Pollock* v. *Brookover* (1906), 60 W. Va. 75, 53 S. E. 795, 6 L. R. A. (N. S.) 403; *Rease* v. *Kittle* (1904), 56 W. Va. 269, 49 S. W. 150. 'An option is not an actual or existing contract for the sale of property. It is a proposition by one party, for a consideration, which must be accepted within the specified time, in the precise terms named, before it becomes a binding contract. If not so accepted, it does not become a contract, and the option is at an end.' . . . "

Applying the legal principle announced in the next above cited authorities, it seems to us that appellant will have to depend upon recovery of his damages on the outcome of the appeal in the condemnation proceeding now before the Supreme Court, and the judgment of the trial court adverse to his claims in the case at bar must stand.

The lease and option before us is not in the same category as the consummated sale contract in the case of *In re Aurora Gaslight Coal and Coke Company* (1917), 64 Ind. App. 690, 113 N. E. 1012, cited by appellant.

Because appellant paid $4,400.00 to brokers who had been employed to secure a purchaser for the property, which sum was to be credited on the purchase price if the option to purchase were exercised in due season, it is contended that appellant acquired some kind of vested interest in the title to the said real estate. We do not interpret the lease with option to purchase after the expiration of five (5) years of the lease as accomplishing this. On the other hand, it seems to us that appellant was simply a lessee of the property, real and personal, with the right or option, after the expiration of five (5) years of the nine and one-half (9-1/2) year lease, to purchase the same. Until and unless appellant's option ripened—by the passage of time, payment of lease rental, the performance of the other obligations set forth in the lease, and the exercise of such option in the manner provided, he had no interest other than as a lessee in and to the property. And such interest could be transformed to title only upon performance of the necessary obligations in the exercise of said option.

The record before us does not disclose unlawful entry, unlawful sale and a misappropriation of money derived from the sale of personal property, which was owned by appellee. Whether appellant may have followed procedures other than those adopted and followed as revealed by the record, thus perhaps to have placed him in a different situation, is not now before us and, accordingly, we do not decide. Our decision is limited to that which is before us; the provisions of the lease

with option to purchase, and what was done by the parties as shown by the record.

Since reversible error has not been demonstrated, the judgment is affirmed.

Hunter and Kelley, JJ., concur; Pfaff, J., concurs in result.

NOTE.—Reported in 193 N. E. 2d 648. Opinion on Motion to Dismiss reported in 183 N. E. 2d 346.